SHANNON LISS-RIORDAN (SBN 310719)
LICHTEN & LISS-RIORDAN, P.C.
sliss@llrlaw.com
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: 617.994.5800
Facsimile: 617.994.5801

Attorneys for Plaintiff ADRIANA ORTEGA,
individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA ORTEGA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE SPEARMINT RHINO COMPANIES WORLDWIDE, INC., SPEARMINT RHINO CONSULTING WORLDWIDE, INC., and MIDNIGHT SUN ENTERPRISES, INC.,<br><br>Defendants. | Case No.: 5:17-cv-00206-JGB-KK<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Jesus G. Bernal<br><br>Date:      January 13, 2019<br>Time:      9:00 a.m.<br>Courtroom: 1<br><br>Complaint Filed: February 3, 2017 |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  BACKGROUND .............................................................................................. 2

    A.   Litigation History ................................................................................... 2

    B.   Mediation Conducted on May 22, 2019 ................................................ 4

    C.   Terms of the Settlement Agreement ...................................................... 5

III. THE COURT SHOULD GRANT PRELIMINARY
    APPROVAL OF THE SETTLEMENT ........................................................ 7

    A.   Legal Standard for Preliminary Approval ............................................ 7

    B.   The Settlement Class Meets the Prerequisites for
        Certification under Rule 23 .................................................................... 8

        1.   Numerosity ................................................................................... 8

        2.   Commonality ............................................................................... 8

        3.   Typicality ..................................................................................... 9

        4.   Adequacy ................................................................................... 10

        5.   Predominance ............................................................................ 10

        6.   Superiority ................................................................................. 10

    C.   The Court Should Preliminarily Approve the Settlement ................... 11

        1.   The Settlement Falls within the Range of Possible
            Approval ..................................................................................... 12

        2.   The Settlement is the Product of Informed, Non-
            Collusive Negotiation ................................................................ 17

        3.   The Settlement Has No Obvious Deficiencies ......................... 17

        4.   The Settlement Does Not Unfairly Grant
            Preferential Treatment to Any Settlement Class
            Members ..................................................................................... 19

IV.  CONCLUSION ............................................................................................. 20

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

<u>Alberto v. GMRI, Inc.</u>,
    252 F.R.D. 652 (E.D. Cal. 2008)...........................................................................8

<u>Barbosa v. Cargill Meat Sols. Corp.</u>,
    297 F.R.D. 431 (E.D. Cal. 2013).....................................................................8, 16

<u>Byrne v. Santa Barbara Hosp. Servs., Inc.</u>
    2017 WL 5035366 (C.D. Cal. Oct. 30, 2017) ...............................................passim

<u>Byrne v. Santa Barbara Hosp. Servs., Inc.</u>
    No. EDCV17527JGBKKX, 2017 WL 5035366 (C.D. Cal. Oct. 30,
    2017).................................................................................................................9

<u>California v. eBay, Inc.</u>,
    2015 WL 5168666 (N.D. Cal. Sept. 3, 2015)....................................................16

<u>Chu v. Wells Fargo Investments, LLC</u>,
    2011 WL 672645 (N.D. Cal. Feb. 16, 2011)......................................................19

<u>Class Plaintiffs v. City of Seattle</u>,
    955 F.2d 1268 (9th Cir. 1992)...........................................................................7

<u>Cotter v. Lyft, Inc.</u>,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ............................................................15

<u>Covillo v. Specialtys Cafe</u>,
    2014 WL 954516 (N.D. Cal. Mar. 6, 2014) .......................................................19

<u>Custom LED, LLC v. eBay, Inc</u>,
    2013 WL 6114379 (N.D. Cal. Nov. 20, 2013).....................................................17

<u>Dalton v. Lee Publications, Inc.</u>,
    270 F.R.D. 555 (S.D. Cal. 2010) ........................................................................9

<u>Estrella v. Freedom Fin'l Network</u>,
    2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010)...................................................9

<u>Hart v. Rick's Cabaret Int'l, Inc.</u>
    967 F. Supp. 2d 901 (S.D.N.Y. 2013) .................................................................14

Hefler v. Wells Fargo & Co.,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................11, 12, 17, 19

Hendricks v. StarKist Co.,
   2015 WL 4498083 (N.D. Cal. July 23, 2015) ......................................................19

In re Facebook, Inc., PPC Adver. Litig.
   282 F.R.D. 446 (N.D. Cal. 2012) .......................................................................10

In re Tableware Antitrust Litig.,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...........................................................2, 19

Lundell v. Dell, Inc.,
   2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) .......................................................12

Lusby v. GameStop Inc.,
   2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ......................................................18

McFeeley v. Jackson St. Entm't, LLC
   825 F.3d 235 (4th Cir. 2016) ..............................................................................14

Morris v. Ernst & Young, LLP,
   834 F.3d 975 (9th Cir. 2016) ................................................................................3

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,
   221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................7

Oppenlander v. Standard Oil Co. (Ind.),
   64 F.R.D. 597 (D.Colo.1974) .........................................................................13, 16

Satchell v. Fed. Express Corp.,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................................................17

Smith v. Cardinal Logistics Mgmt. Corp.,
   2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) .........................................................9

Van Vranken v. Atl. Richfield Co.,
   901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................19

Villalpando v. Exel Direct, Inc.,
   303 F.R.D. 588 (N.D. Ca. 2014) ...........................................................................8

Villegas v. J.P. Morgan Chase & Co.
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ......................................................15

iii

<u>Vinh Nguyen v. Radient Pharm. Corp.</u>,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................ 19

**Other Authorities**

Manual for Complex Litig., Third, § 30.41 (1995) ...................................................... 7

**Rules**

Fed. R. Civ. P. 23 ........................................................................................... passim

## I.    INTRODUCTION

Pursuant to Federal Rule of Procedure Rule 23, Plaintiffs move this Court for an order preliminarily approving a class action settlement agreement entered into by Plaintiffs and Defendants The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., Midnight Sun Enterprises, Inc., and related entities.  The settlement was entered into after an all-day, in-person mediation session with respected mediator D. Charles Stohler on May 22, 2019, which resulted in a "short form term sheet" setting forth "the principal points agreed to b[y] the parties and their counsel."  Over the past several months, the Parties have finalized the longform proposed Settlement Agreement that is attached hereto as Exhibit 2.  Plaintiffs now seek preliminary approval of the settlement agreement under Rule 23(e).

The proposed class action settlement meets the requirements for preliminary approval under Rule 23(e), as it follows almost three years of hard fought litigation, and was achieved with the assistance of well-known labor and employment mediator.  The Agreement provides for a $3,650,000 cash settlement fund.  The fund is non-reversionary, so no amount will be returned to Defendants and all funds will be distributed to participating class members (after accounting for reasonable awards of attorneys' fees, litigation costs, and service payments to the named and originating Plaintiffs).[1] The settlement class includes only "individuals who performed as entertainers and in conjunction therewith have provided nude, semi-nude, and/or bikini entertainment for customers from October 30, 2017 through the date of entry of the Preliminary Approval Order as 'LLC Members' or 'independent contractors' during any portion of the foregoing time period" for Spearmint Rhino-

---

[1]   Only amounts from uncashed checks in the final distribution of settlement funds will be sent to a *cy pres* beneficiary.

affiliated clubs in California.[2]  See Agreement, Exhibit 2, at ¶ 1.12.  The class also includes those opt-outs from the related <u>Byrne</u> case who worked in California.

The settlement satisfies the standard for preliminary approval—it is undoubtedly within the range of possible approval to justify sending notice to settlement class members and scheduling final approval proceedings.  <u>See</u> Fed. R. Civ. P. 23(e); <u>In re Tableware Antitrust Litig.,</u> 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Thus, the Court should enter an Order in the form attached hereto as Exhibit 1: (1) granting preliminary approval of the settlement; (2) certifying, for settlement purposes only, a settlement class of all individuals who performed as exotic dancers at Spearmint Rhino affiliated clubs in California, from October 30, 2017 to the date of preliminary approval, and the <u>Byrne</u> opt-outs who also worked in California; (3) approving the manner and forms of notice, as attached hereto as Exhibit 3; (4) appointing Lichten & Liss-Riordan, P.C. to represent the settlement class as class counsel; (5) appointing Kurtzman Carson Carlson, LLC, and Co. as Settlement Administrator;[3] and (6) scheduling a hearing for final approval following the Notice period, in approximately May 2020.

## II.   BACKGROUND

### A. <u>Litigation History</u>

Plaintiff filed this action on February 3, 2017, alleging that Defendants had misclassified exotic dancers at Spearmint Rhino clubs as independent contractors and, in so doing, violated the FLSA and various sections of the California Labor

---

[2] Plaintiffs' understanding is that the clubs' practice of providing entertainers with the choice of being classified as employees or owners/LLC has been discontinued as of the time of mediation in May 2019, and (with the exception of one location) dancers now perform at the clubs only as employees.

[3] As set forth in the Parties' agreement, they have agreed to use this entity for settlement administration because this entity administered the settlement notice in the related <u>Byrne</u> matter.

Code. See Dkt. 1. Plaintiff then filed an amended complaint, asserting the same claims plus a PAGA representative action on behalf of Spearmint Rhino dancers in California, arising from Defendants' violations of the Labor Code.  See Dkt. 34.

On March 29, 2017, Ms. Ortega moved for conditional certification of the proposed FLSA collective.  Dkt. 16.  Defendants opposed the motion and filed their own motions to stay the case and to compel Ms. Ortega's claims to arbitration. See Dkt.'s 18, 21.  Following full briefing on the motions, the Court held a hearing and subsequently denied Ms. Ortega's motion without prejudice to permit re-filing after additional discovery, denied Defendants' Motion to Compel Arbitration pending a decision in Morris v. Ernst & Young, LLP, 834 F.3d 975 (9th Cir. 2016), cert. granted, No. 16-300, and granted in part Defendants' Motion to Stay (permitting Plaintiff to propound discovery necessary to renew a motion for conditional certification).  See Dkt. 48.

While discovery in this matter was ongoing related to Plaintiffs' FLSA claims, Plaintiff's counsel learned that the Defendant clubs had reached a settlement with plaintiffs' counsel in two later-filed cases, Byrne and Bracy. See Bracy v. DG Hospitality Van Nuys, LLC, et al., No. 17-854 (C.D. Cal.); Byrne v. Santa Barbara Hospitality Services, Inc., No. 17-527 (C.D. Cal.).  Defendants filed a motion for a protective order to cease discovery in the Ortega matter, arguing that the Byrne settlement would moot Ms. Ortega's claims.  See Dkt. 53.  Ms. Ortega opposed the motion for the protective order.   The parties ultimately agreed to put resolution of the motion on hold until after the Court's consideration of the Byrne and Bracy settlement.  See Dkt.'s 58, 59.

When the terms of the Byrne settlement were revealed, Ms. Ortega and a handful of other class members objected to that settlement.  See Byrne, Dkt 90.  That settlement covered the claims of approximately 8,500 dancers and, at final approval proposed to pay $350,884 to $598,453 to class members, and an additional $1.7 million in attorney's fees.  Byrne, Dkt. 178 (Order granting final

approval).  The settlement was approved on December 14, 2018 over the objections of several dancers, including Ms. Ortega.

While this action was stayed, three other dancers opted-in to this action.  <u>See</u> Dkt. 61, 67.  Two of the opt-in Plaintiffs excluded themselves from the <u>Byrne</u> settlement.  <u>See</u> Dkt. 75 at 5 n.3.  One of the opt-in Plaintiffs, Ms. McCrea, worked for Defendants until April 4, 2019, well after the end of the release period covered by the <u>Byrne</u> settlement.  <u>See</u> Dkt. 67-1.

Following the conclusion of the <u>Byrne</u> approval process, the Parties attended a status conference on March 4, 2019 at which time Plaintiff Ortega expressed her intention to re-move for conditional certification, and Defendants expressed their intention to re-move to compel Plaintiff Ortega's claims to arbitration and to stay this matter.

Following a hearing on these motions, on May 15, 2019, the Court granted Plaintiffs' motion for conditional certification of an FLSA collective action, and FLSA notice was set to issue to a group of more than 1,000 dancers across California. <u>See</u> Dkt. 83.

**B. <u>Mediation Conducted on May 22, 2019</u>**

While the Parties were in the process of conferring regarding the form and process for FLSA notice (pursuant to the Court's conditional certification Order), they attended a non-binding mediation with mediator D. Charles Stohler in Boston, Massachusetts.  Counsel for the <u>Byrne</u> plaintiffs were also present.

As a result of this mediation, improvements to the <u>Byrne</u> settlement were negotiated, particularly that "overhead credits" would be eliminated and another round of notice will be distributed to <u>Byrne</u> class members who are subject to the classwide release in that action that was given final approval by the Court on December 14, 2018, so that <u>Byrne</u> class members have an additional opportunity to submit a claim to be paid from the <u>Byrne</u> funds that were otherwise reverting to Defendants.  As a result of these improvements, the remaining objectors who had

4

appealed the Court's final approval order in <u>Byrne</u> have agreed to withdraw their objections and dismiss their appeal.

Plaintiffs in this Action also negotiated a settlement that would resolve the post-<u>Byrne</u> claims of California dancers at fourteen of Defendants' clubs in California for the non-reversionary settlement fund of $3,650,000.  On May 23, 2019, the Parties submitted a joint filing informing the Court that a settlement had been reached and that they were finalizing settlement approval papers.  See Dkt. 85. The specific terms of that settlement are described in greater detail below.

C. <u>Terms of the Settlement Agreement</u>

As stated above, the settlement creates a $3,650,000 cash settlement fund. This fund is non-reversionary and therefore no funds will revert to Defendants following administration of the settlement. The settlement funds would be distributed as follows:

- **$100,000** of the fund is designated for Plaintiffs' PAGA claims, 75% of which will be paid to the California Labor and Workforce Development Agency.

- **$10,000**, comprised of four incentive payments of $2,500 each to be paid to the originating Plaintiffs who brought this Action (Adriana Ortega, Roberta Friedman, Adriana Avelar and Sheyenne McCrea).

- **$912,500** in requested attorney's fees, comprising 25% of the non-reversionary cash settlement fund with a separate award of costs.[4]

- **$2,600,000 (approximately)** in remaining funds to be paid to all class members who submit a claim form, with settlement shares calculated based on the number of "dance days" that each individual performed at Defendants' clubs.

---

[4] Plaintiffs counsel shall also request reimbursement of actual litigation expenses in conjunction with final approval.

The Rule 23 class is defined to include all individuals who worked as LLC Member or independent contractor exotic dancers at any time during the Settlement Class Period in Defendants' clubs in California from October 30, 2017 to the date of preliminary approval. Agreement, Exhibit 2, at ¶ 1.12.  The class also includes Byrne opt-outs who worked in California.

The claims administrator that has already been designated as part of the Byrne settlement will administer the settlement notice in the Ortega matter, with class notice to be mailed and e-mailed, posted at the relevant clubs, and placed on a settlement website.  Agreement, Exhibit 2, at ¶ 3.1.1.  A reminder notice would be sent via email fourteen days prior to the claims deadline, with additional reminder mailings as necessary. Agreement, Exhibit 2, at 3.1.2. The settlement administration will be paid for through the reversionary funds that had been made available in the Byrne settlement and will not come out of the $3,650,000 *Ortega* fund. See Agreement, Exhibit 2, at ¶ 5.3.

The settlement fund will be paid and distributed over several years.  Within thirty days of the effective date of the settlement, Defendants shall pay the first $800,000 towards their obligations under the Settlement, which shall thereafter be distributed on a *pro rata* basis for claiming class members, PAGA payment, and Court-approved attorney's fees and costs, with full payment of the Court-approved incentive awards.  The Parties estimate that this first distribution will be in the summer of 2020, but it will be contingent on when the settlement obtains final approval.

Following the first Ortega payment, Defendants shall complete their payment obligations under the Byrne settlement, and then resume payments under the Ortega settlement in the amount of no less than $150,000 per month.  Thus, it will take an additional 19 months to complete full payment of the Ortega settlement after the payment in Byrne is complete (comprised of the $800,000 initial payment, and then 19 monthly payments of $150,000, equaling the total $3,650,000 Ortega settlement

fund).

The practical result of this payment schedule is that, based on the Parties' reasonable estimates, there will be a first distribution of funds to Ortega class members in the summer of 2020 (described above), a second distribution under the Ortega settlement in 2021 to claiming class members, a third distribution in 2022 to claiming class members, and a final distribution in 2023 to claiming class members.

This extended payment period is a result of financial challenges faced by the Defendant clubs arising from recent changes to their business model, reflecting the reality that Defendants would not be able to satisfy a larger judgment or settlement at this time.

## III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

### A. Legal Standard for Preliminary Approval

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval.  "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004), citing Manual for Complex Litig., Third, § 30.41 (1995).

Pursuant to Rule 23, preliminary approval of proposed class action settlement is appropriate where the parties make a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).  As set forth below, the settlement class will likely be certified and all of the requirements of Rule 23(e)(2) have been met as well.  "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements,

particularly where complex class action litigation is concerned.'" <u>Id.</u> at *2 (citing <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992)).

## B. <u>The Settlement Class Meets the Prerequisites for Certification under Rule 23</u>

The Court must confirm the propriety of the settlement class by determining "if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b)." <u>Alberto v. GMRI, Inc.</u>, 252 F.R.D. 652, 659 (E.D. Cal. 2008). Rule 23(a) requires that the Plaintiffs demonstrate: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." <u>Barbosa v. Cargill Meat Sols. Corp.</u>, 297 F.R.D. 431, 441 (E.D. Cal. 2013).

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Numerosity

A plaintiff will satisfy the numerosity requirement if "the class is so large that joinder of all members is impracticable." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir.1998). "Although the requirement is not tied to any fixed numerical threshold, courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." <u>Villalpando v. Exel Direct, Inc.</u>, 303 F.R.D. 588, 605-06 (N.D. Ca. 2014). Here, the class contains approximately 3,600 individuals, and therefore numerosity is satisfied.

### 2. Commonality

Courts have found that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, [to satisfy commonality under Rule 23] as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Smith v. Cardinal Logistics Mgmt. Corp.</u>, 2008 WL 4156364, *5 (N.D. Cal. Sept. 5, 2008).  The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." <u>Estrella v. Freedom Fin'l Network</u>, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019-1020 (9th Cir. 1998)).  Here, all settlement class members share the key question of whether they have been improperly classified as non-employee independent contractors, or "LLC members," and they also share common questions of law with respect to their substantive claims.  Just as the Court found that commonality was satisfied in the <u>Byrne</u> settlement in which similar claims were asserted, commonality is also satisfied here.  See <u>Byrne v. Santa Barbara Hosp. Servs., Inc.</u>, 2017 WL 5035366, at *6 (C.D. Cal. Oct. 30, 2017) (were "[t]he basic allegation concerns whether Defendants misclassified its exotic dancers as members of an LLC rather than as employees," commonality was satisfied).

### 3.  Typicality

"Typicality is a permissive standard, and only requires that the named plaintiffs' claims are 'reasonably coextensive' with those of the class." <u>Dalton v. Lee Publications, Inc.</u>, 270 F.R.D. 555, 560 (S.D. Cal. 2010).  Thus, "[i]n examining this condition, courts consider whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same alleged common practice." <u>Id.</u> (internal quotation omitted).  Here, as the Court recognized in its preliminary approval decision in <u>Byrne</u>, there are no factual differences between Plaintiffs' claims and those of the settlement class members; all dancers allegedly have suffered the same misclassification and resulting wage and hour violations.  <u>Byrne,</u> 2017 WL 5035366, at *7 ("the class representatives all had the same job title and duties, and were subject to the same alleged misclassification as

9

members of an LLC as the class members they seek to represent. They advance the same legal theories. This satisfies the typicality requirement.").

### 4. Adequacy

"Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020.  Here, the class representatives are members of the class and they have vigorously prosecuted this action on behalf of the class members.  In addition, class counsel is highly qualified with extensive experience in class action wage and hour litigation such that adequacy is satisfied. See O'Connor v. Uber Techs., Inc., 2019 WL 1437101, at *15 (N.D. Cal. Mar. 29, 2019) (granting preliminary approval of class action settlement and finding that attorneys at Lichten & Liss-Riordan, P.C. were "experienced and adequate counsel for purposes of these settlement approval proceedings").

### 5. Predominance

The Rule 23(b)(3) predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by a class action. Hanlon, 150 F.3d at 1022. A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims. Id. That plaintiffs may be owed different amounts of damages is not fatal to the 23(b)(3) prerequisite as long as the individualized damages are a matter of "straightforward accounting." See In re Facebook, Inc., PPC Adver. Litig., 282 F.R.D. 446, 459 (N.D. Cal. 2012).  Here, just as in Byrne, "all potential class members assert the same legal claims premised on the same policies and practices," and therefore predominance is satisfied.  See Byrne, 2017 WL 5035366, at *7.

### 6. Superiority

A class action is the superior method for adjudication and settlement of the claims in this Action.  As in Byrne, "[n]either class members' interests in

10

individually controlling separate actions, existing litigation, desirability of the forum, nor difficulties in managing a class action weigh against certification. Class members here lack the resources and incentives to pursue their individual damage amounts. Thus, the class action procedural device is superior to individual adjudication." <u>Byrne</u>, 2017 WL 5035366, at *7.

## C. <u>The Court Should Preliminarily Approve the Settlement</u>

Rule 23 require the district court to consider a list of factors when granting preliminary approval, namely, whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;

   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

<u>Hefler v. Wells Fargo & Co.</u>, 2018 WL 6619983, at *3–4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2)).  In the notes accompanying the recent amendments to Rule 23, "the Advisory Committee acknowledged that '[c]ourts have generated lists of factors' to determine the fairness, reasonableness, and adequacy of a settlement" such that "adding these specific factors to Rule 23(e)(2) was not designed 'to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" <u>Id.</u> at *4.

Courts in the Ninth Circuit have typically found preliminary approval of a settlement and notice to the class is appropriate if it:  (1) falls within the range of possible approval; (2) is the product of serious, informed, non-collusive negotiations, (3) has no obvious deficiencies; and (4) does not improperly grant preferential treatment to class representatives or segments of the class.  Deaver v. Compass Bank, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015).

Here, both under the factors enumerated in Rule 23(e)(2) and the factors traditionally considered by the Ninth Circuit, the proposed settlement clearly warrants preliminary approval.[5]

### 1.  The Settlement Falls within the Range of Possible Approval

"Rule 23(e)(2)(C) and (D) set forth factors for conducting a 'substantive' review of the terms of the proposed settlement."  Hefler, 2018 WL 6619983, at *7 (citing Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment).  "In determining whether 'the relief provided for the class is adequate,' the Court must consider '(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).'"  Id. (citing Rule 23(e)(2)).

Similarly, courts in the Ninth Circuit have evaluated "the range of possible approval criterion, which focuses on substantive fairness and adequacy, [] primarily [by] consider[ing] plaintiff's expected recovery balanced against the value of the settlement offer."  Deaver v. Compass Bank, 2015 WL 4999953, *9 (N.D. Cal.

---

[5] Plaintiffs have organized their discussion below based on the preliminary approval factors set forth in decisions from within the Ninth Circuit, as nearly all of these factors encompass the considerations now contained within the language of Rule 23(e).

Aug. 21, 2015).  A careful risk/benefit analysis informs counsel's valuation of a class's claims. <u>Lundell v. Dell, Inc.</u>, 2006 WL 3507938, *3 (N.D. Cal. Dec. 5, 2006).

### a.    Risks of Further Litigation

A "relevant factor" that courts must consider in contemplating a potential settlement is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement."  <u>Vasquez v. Coast Valley Roofing, Inc.</u>, 266 F.R.D. 482, 489 (E.D. Cal. 2010).  Thus, courts "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."  <u>Id.</u> (citing <u>Oppenlander v. Standard Oil Co. (Ind.)</u>, 64 F.R.D. 597, 624 (D.Colo.1974)).  Here, there are a number of risks that Plaintiffs had to consider:

    1) The possibility that some or all of the class members would have their claims compelled to individual arbitration;

    2) The numerous affirmative defenses asserted by Defendants, including that they were entitled to an "offset" of Plaintiffs' unpaid wage damages;

    3) The risk that a class or collective may not be maintained through trial;

    4) The risks inherent in litigating the merits of Plaintiffs' misclassification claims under California law and the FLSA.

The court has held that similar risks justified preliminary approval of the settlement in <u>Byrne</u>, and the same is true here.  <u>Byrne</u>, 2017 WL 5035366, at *9 (describing "risk factors weighing against continuing the litigation and encouraging settlement").

### b.    Benefits to Dancers

Given the nature of Plaintiffs' claims and the risks described above, the settlement provides substantial benefit to dancers, particularly when viewed in light

13

of the prior <u>Byrne</u> settlement (which was previously approved by this Court, but has now been improved to provide for enhanced benefits).

Here, Plaintiffs asserted three central claims that have often been most successful in wage and hour cases brought by exotic dancers:  claims for minimum wage for all hours worked, claims to recover unlawfully withheld gratuities, and claims to recover unlawful house fees or "overhead" fees paid to work.  See <u>See, e.g.</u>, <u>McFeeley v. Jackson St. Entm't, LLC</u>, 825 F.3d 235, 246 (4th Cir. 2016) (affirming award of minimum wage damages for all hours worked by dancers despite dancers' earnings directly from patrons); <u>Hart v. Rick's Cabaret Int'l, Inc.</u>, 967 F. Supp. 2d 901, 927-33, 952 (S.D.N.Y. 2013) (awarding minimum wage damages for all hours worked and holding that tip-outs were recoverable under NYLL § 196–d).

In the prior <u>Byrne</u> case, the court observed that, based on data related to the settlement class period, a group of 8,500 dancers over a five-year period at eighteen different clubs had worked 440,000 "dance days."  See <u>Byrne</u>, Dkt. 178 at 14-16. Here, the class period is closer 1.5 years as the period begins to run on October 30, 2017, and the clubs ended their policy of treating dancers as non-employees in California around May 2019.  In addition, the <u>Ortega</u> settlement covers only 3,600 dancers at fourteen clubs in California, as opposed to eighteen clubs across the country.  Given that the shorter class period here is 30% of the class period in <u>Byrne</u>, and there were two-thirds as many clubs, there would have been approximately 88,000 "dance days" worked by the class here.  Assuming $60 per shift in minimum wage damages, and a total of $200 total per shift in house fees

and unpaid gratuities claims, the damages here would be $22,880,000.[6]  The non-reversionary $3,650,000 settlement fund constitutes 16% of this amount, which is within the range of approval.  See Villegas v. J.P. Morgan Chase & Co., 2012 WL 5878390, *6 (N.D. Cal. Nov. 21, 2012) (approving gross settlement of "approximately fifteen percent (15%) of the potential recovery against Defendants," noting that "it is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair"); see also Cotter v. Lyft, Inc., 193 F. Supp. 3d 1030, 1039 (N.D. Cal. 2016) (approval of settlement in wage and hour case that was worth 17% of the workers' central claim).[7]

Though the amount described above is a reasonable estimate, and more detailed information can be provided at the final approval stage, the Court has observed in Byrne that preliminary approval may be granted even where Plaintiffs "do not estimate what their maximum amount of damages would be if their litigation would have been completely successful," as long as the amount offered in the settlement is reasonable in light of the risks of further litigation.  Byrne, 2017 WL 5035366, at *9.  Here, the amount offered by the settlement is more than reasonable, and preliminary approval is appropriate.

---

[6] The Byrne plaintiffs estimated their damages at $109 per "dance day," but as the court noted at final approval, they never made any calculation of the potential recovery on the claims to recover unlawful overhead or house fees; however, the Court did not find that the failure to value this claim prevented final approval. Byrne, Dkt. 178 at 14-16.  Here, the estimated damages per day (or per shift) are $260, more than double the amount used to justify the settlement in Byrne on a per shift basis, having taken into account all of the central claims.

[7] As the Court observed, after an award of attorney's fees, the Byrne settlement paid approximately 0.73% to 1.25% of the potential recovery to Byrne class members in cash, which the Court did not find prevented final approval. Byrne, Dkt. 178 at 15 n.6.  This payout will now be improved due to subsequent negotiations and an additional round of notice in Byrne.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The settlement amount and the proposed payment schedule also reflect an additional risk, the reality that Defendants may not be able to satisfy a larger judgment or settlement given their financial outlook.  The clubs have independently reclassified all dancers as employees, a process that was mostly completed prior to the settlement negotiations in this Action.  This has altered the clubs' financial outlook, and influences Plaintiffs' view that the negotiated settlement is fair and reasonable given the financial realities of the situation.

Preliminary approval is also warranted because courts have recognized the value of obtaining relatively prompt settlements and the benefits to class members of receiving payments sooner rather than later, where litigation could extend for years on end, thus significantly delaying any payments to class members.  "A court may consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Vasquez, 266 F.R.D. at 489 (internal citation omitted); see also Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 446 (E.D. Cal. 2013) (noting that "there were significant risks in continued litigation and no guarantee of recovery" whereas "[t]he settlement [] provides Class Members with another significant benefit that they would not receive if the case proceeded— certain and prompt relief"); California v. eBay, Inc., 2015 WL 5168666, *4 (N.D. Cal. Sept. 3, 2015) ("Since a negotiated resolution provides for a certain recovery in the face of uncertainty in litigation, this factor weighs in favor of settlement"); Oppenlander v. Standard Oil Co., 64 F.R.D. 597, 624 (D.Colo.1974) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.").

Given the risks described above, the substantial, non-reversionary cash recovery, and the benefits to be gained from resolving this matter now rather than dragging this litigation on for many years in this forum and potentially in individual arbitrations, the settlement falls within the range of reasonableness required for approval.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### 2.   The Settlement is the Product of Informed, Non-Collusive Negotiation

Under Fed. R. Civ. P. 23(e)(2)(A)-(B), "[t]he Court must consider whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length', [which] [] the Advisory Committee notes suggest, [] are 'matters that might be described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement.'"  Hefler, 2018 WL 6619983, at *6.  "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  Satchell v. Fed. Express Corp., 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007).  Here, this action was intensely litigated for several years, involving briefing on Plaintiffs' motion for conditional certification, Defendants' motion to compel arbitration, and a variety of other issues that arose when Defendants attempted to settle Ms. Ortega's class claims in the Byrne settlement.  Moreover, in order to reach this Agreement, the Parties engaged an experienced labor and employment mediator, D. Charles Stohler.  This demonstrates that the settlement is the result of non-collusive, informed negotiation.

### 3.   The Settlement Has No Obvious Deficiencies

A court should also consider possible deficiencies in a settlement including an overly broad release of claims, an insufficient timeframe for notice, an inadequate form of payment, an unrelated *cy pres* designee, or an unreasonable request for attorneys' fees, among other things.[8]  See Custom LED, LLC v. eBay,

---

[8]      In the recent decision in Roes, 1-2 v. SFBSC Management, LLC, the Ninth Circuit reversed approval of a class action settlement in a wage case brought on behalf of exotic dancers because 1) the attorney's fees were greater than the cash recovery of class members, 2) the settlement was reversionary, 3) the settlement used a single mailed notice, with no email and no reminder mailing, and 4) much of the relief offered to class members was in the form of coupons that could be used towards future work at the club.  See Roes, 1-2 v. SFBSC Management, LLC,  ---F.3d ---, 2019 WL 6721190 (9th Cir. Dec. 11, 2019).  None of these "red flags" are

---

<u>Inc</u>, 2013 WL 6114379, *7-8 (N.D. Cal. Nov. 20, 2013); <u>Deaver</u>, 2015 WL 4999953, *7.  Here, settlement class members will release only claims that were alleged or could have been alleged in this Action, including claims arising from alleged employee misclassification.  The timeframe for notice is adequate, and settlement class members will be given ample opportunity to submit claims (90 days, as set forth in the proposed notice attached as Exhibit 3).

Further, the attorneys' fee provision is fair and does not give rise to any deficiency.  Plaintiffs' counsel intends to apply for fees not to exceed 25% of the gross settlement fund (totaling $912,500).  "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage." <u>Barbosa v. Cargill Meat Sols. Corp.</u>, 297 F.R.D. 431, 448 (E.D. Cal. 2013).  This percentage fee recovery is a lower percentage than many recent fee awards in California district courts.  <u>See</u>, <u>e.g.</u>, <u>Vasquez</u>, 266 F.R.D. at 492 (E.D. Cal. 2010) (collecting recent wage and hour cases in which counsel received fee awards in the range of 30% to 33.3% of the common fund); <u>Lusby v. GameStop Inc.</u>, 2015 WL 1501095, *9 (N.D. Cal. Mar. 31, 2015) (finding a one-third fee award appropriate because to the results achieved, the risk of litigation, the skill required and the quality of work, and the contingent nature of the fee and the financial burden carried by the plaintiffs).  Because the "benchmark of twenty-five percent of the common fund is a reasonable fee award," <u>Byrne</u>, 2017 WL 5035366, at *10, the requested fees in

---

presented by the settlement in the instant case, which is non-reversionary, requests the "benchmark" 25% award of attorney's fees, contains no "coupon" relief, and provides all settlement benefits *in cash*, and utilizes mail and email notice, as well as an email reminder mailing, and posting of settlement notice on a website and at the club locations.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  this case are "reasonable and weigh in favor of preliminary approval." Id. at *10.[9]

2

3

4          **4.      The Settlement Does Not Unfairly Grant Preferential**
               **Treatment to Any Settlement Class Members**

5          "Consistent with Rule 23's instruction to consider whether 'the proposal

6  treats class members equitably relative to each other,' Fed. R. Civ. P.

7  23(e)(2)(C)(i), the Court considers whether the Settlement 'improperly grant[s]

8  preferential treatment to class representatives or segments of the class.'" Hefler,

9  2018 WL 6619983, at *8 (citing In re Tableware Antitrust Litig., 484 F. Supp. 2d

10 1078, 1079 (N.D. Cal. 2007)).  "[T]o the extent feasible, the plan should provide

11 class members who suffered greater harm and who have stronger claims a larger

12 share of the distributable settlement amount."  Hendricks v. StarKist Co., 2015 WL

13 4498083, *7 (N.D. Cal. July 23, 2015) (citing cases).  However, "courts recognize

14 that an allocation formula need only have a reasonable, rational basis, particularly if

15 recommended by experienced and competent counsel." Id. citing Vinh Nguyen v.

16 Radient Pharm. Corp., 2014 WL 1802293, *5 (C.D. Cal. May 6, 2014).  Here, the

17 settlement will result in payment of a fair and reasonable award to settlement class

18 members, particularly in light of the litigation risks.  Class members will receive a

19 proportional share of the settlement fund based on the number of days that they

20 worked for Defendants, which closely approximates their hours worked and is

21 therefore closely related to their potential minimum wage and unpaid wage

22 damages in this case.  This was the same distribution formula approved as fair in

23 the Byrne settlement.  Byrne, 2017 WL 5035366, at *5.

24        Likewise, the proposed enhancements for the named plaintiffs in this

25 settlement are eminently reasonable.  Plaintiffs will request enhancements of

26

27          [9] Plaintiffs will submit information regarding the time spent by counsel on
28 this case at the time of final approval.

$2,500 for the named and opt-in plaintiffs who have been part of this case since nearly the beginning and have participated most actively.  These amounts are the same as those that this Court approved as fair in the <u>Byrne</u> settlement, see <u>Byrne</u>, 2017 WL 5035366, at *10, and they are significantly less than amounts approved in other cases in the district courts in California.  <u>Covillo v. Specialtys Cafe</u>, 2014 WL 954516, *8 (N.D. Cal. Mar. 6, 2014) (awarding $8,000 to class representatives from $2,000,000 fund); <u>Van Vranken v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (awarding $50,000 to named plaintiff out of $76 million settlement fund); <u>Chu v. Wells Fargo Investments, LLC</u>, 2011 WL 672645, *2 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 incentive awards to two named plaintiffs).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval should be granted.  Plaintiffs request that the Court enter an Order in the form attached hereto as Exhibit 1 granting preliminary approval of the class action settlement in this matter.


Dated: December 16, 2019                Respectfully submitted,
                                        ADRIANA ORTEGA, on behalf of herself
                                        and all other similarly situated,

                                        By her attorneys,

                                        */s/ Shannon Liss-Riordan*
                                        Shannon Liss-Riordan (State Bar No.
                                        310719)
                                        sliss@llrlaw.com
                                        LICHTEN & LISS-RIORDAN, P.C.
                                        729 Boylston Street, Suite 2000
                                        Boston, MA 02116
                                        Telephone: (617) 994-5800