# STIPULATION AND SETTLEMENT AGREEMENT DATED AS OF DECEMBER 16, 2019

# TABLE OF CONTENTS

**Page**

1.      DEFINITIONS. ................................................................................................2

    1.1      "Actions". ................................................................................................2

    1.2      "Administrative Costs" .........................................................................2

    1.3      Intentionally Left Blank ........................................................................2

    1.4      "Attorney Fee and Expense Award" .....................................................2

    1.5      "*Bracy* Action" ....................................................................................3

    1.6      "*Byrne* Action".....................................................................................3

    1.7      "*Byrne* Agreement" or "*Byrne* Settlement Agreement". .................3

    1.8      "CAFA Notice"......................................................................................3

    1.9      "California Class Period"........................................................................3

    1.10     "California Released Claims". ...............................................................3

    1.11     "California Releasing Persons"..............................................................4

    1.12     "California Settlement Class" ................................................................4

    1.13     "California Settlement Class Member"..................................................5

    1.14     "Cash Payment" ....................................................................................5

    1.15     "Claim(s)" .............................................................................................5

    1.16     "Claims Period"......................................................................................5

    1.17     "Class Counsel"......................................................................................6

    1.18     "Class Member(s)" or "Member(s) of the Settlement Class(es)".........6

    1.19     "Class Notice" .......................................................................................6

    1.20     "Class Notice Documents" ....................................................................6

    1.21     "Class Representatives".........................................................................6

    1.22     "Clubs".................................................................................................6

i

## TABLE OF CONTENTS (cont.)

**Page**

1.23   "Club Owners"...................................................................................6

1.24   "Companies"....................................................................................7

1.25   "Consulting"....................................................................................7

1.26   "Court"...........................................................................................7

1.27   "*Cy Pres* Beneficiary"....................................................................7

1.28   "Dance Day(s)"................................................................................7

1.29   "Defendants"...................................................................................7

1.30   "Defendants' Counsel".....................................................................8

1.31   "Effective Date"..............................................................................8

1.32   "Entertainer(s)"...............................................................................8

1.33   "Fairness Hearing"..........................................................................8

1.34   "FLSA"...........................................................................................9

1.35   "FLSA Class Period".......................................................................9

1.36   "FLSA Releasing Persons"...............................................................9

1.37   "FLSA Settlement Class".................................................................9

1.38   "FLSA Settlement Class Member".....................................................9

1.39   "Gross Cash Settlement Amount".....................................................9

1.40   "Initial Mailing".............................................................................9

1.41   "Judgment".....................................................................................9

1.42   "Lead Class Counsel".....................................................................10

1.43   "LLC Member" or "Owner".............................................................10

1.44   "LWDA"........................................................................................10

1.45   "Member(s) of Settlement Class(es)" or "Class Member(s)".............10

1.46   "Net Settlement Amount"...............................................................10

ii

## TABLE OF CONTENTS (cont.)

**Page**

1.47    Intentionally left blank .......................................................................... 10

1.48    "*Ortega* Action" .................................................................................. 10

1.49    "*Ortega* Agreement" or "*Ortega* Settlement Agreement" .................. 10

1.50    "Party" and "Parties" ......................................................................... 10

1.51    "Person" ............................................................................................... 10

1.52    "Plaintiffs" ........................................................................................... 11

1.53    "Preliminary Approval Order" ............................................................. 11

1.54    "Released Persons" .............................................................................. 11

1.55    "Settlement" ......................................................................................... 11

1.56    "Settlement Administrator" ................................................................. 11

1.57    "Settlement Classes" ........................................................................... 11

1.58    "Unknown Claims" .............................................................................. 11

1.59    "Valid Claim(s)" .................................................................................. 13

2.      BACKGROUND FACTS .................................................................................. 13

2.1     **The 2017 Cases** ...................................................................................... 13

      2.1.1    **The *Ortega* Action** ...................................................................... 13

      2.1.2    ............................................................................................ 14

      2.1.3    **The *Byrne* Action** ......................................................................... 15

      2.1.4    **The *Bracy* Action** ......................................................................... 15

      2.1.5    **The *Nelson* Action.** ....................................................................... 16

2.2     **Final Approval in Byrne.** ........................................................................ 16

2.3     **Negotiation and Mediation.** .................................................................. 16

      2.6.1    **Arbitration.** .................................................................................. 17

      2.6.2    ***Trauth* Injunctive Relief** .............................................................. 17

## TABLE OF CONTENTS (cont.)

**Page**

2.6.3 **Offsets** ........................................................................................17

2.6.4 **Other Defenses** ..............................................................................18

3. TERMS OF THE SETTLEMENT AGREEMENT ........................................18

   3.1 **Class Notice Provided**..............................................................................18

      3.1.1 **Initial Mailed Notice**...............................................................18

      3.1.2 **Reminder Notice**......................................................................20

      3.1.3 **Internet Notice**.........................................................................20

      3.1.4 **Posted Notice In Existing Clubs**..............................................20

      3.1.5 **Additional Reminder Notice**....................................................20

   3.2 **Claims, Objections And Opt-Outs**...........................................................20

      3.2.1 **Claims**......................................................................................20

      3.2.2 **Objections**................................................................................21

      3.2.3 **Opt-outs**...................................................................................21

4. SECOND AMENDED COMPLAINT, SUBMISSION OF MOTION FOR
FINAL APPROVAL OF SETTLEMENT WITH SETTLEMENT
ADMINISTRATOR DECLARATION .........................................................22

   4.1 **Second Amended Complaint**....................................................................22

   4.2 **Plaintiffs' Submission of Additional Materials For Final Approval
Of Settlement**............................................................................................24

5. PAYMENTS BY DEFENDANTS ...............................................................24

   5.1 **Settlement Amount**..................................................................................24

      5.1.1 **The Gross Cash Settlement Amount**........................................24

      5.1.2 **Four Distributions of Settlement Funds**...................................25

   5.2 **Penalties Pursuant To California Labor Code Section 2699**......................27

   5.3 **Costs Of Settlement Administrator**...........................................................27

**TABLE OF CONTENTS (cont.)**

**Page**

5.4      **Class Counsel Attorneys' Fees And Expenses.** ................................... 27

     5.4.1    **Payment To Be Made From Gross Settlement Fund.** .......................... 27

     5.4.2    **Application.** ............................................................................. 28

     5.4.3    **Court Award Of Fees And Costs Is Exclusive Remedy.** ................. 28

     5.4.4    **Fees And Expenses For Objecting Class Members Or Class Members Who Opt-Out.** ........................................................ 28

5.5      **Incentive Fee Awards** ................................................................ 29

     5.5.1    **Application For Incentive Fees.** ............................................... 29

     5.5.2    **Payment Of Incentive Fees.** ................................................... 29

5.6      **Payment To Class Members.** ..................................................... 29

     5.6.1    **Claim Forms Process.** ............................................................ 29

     5.6.2    **Payment Formula.** ................................................................ 30

     5.6.3    **Determination Of Number Of Dance Days For Individual Class Member Compensation.** ............................................... 30

     5.6.4    **Determination Of The Identity Of The Clubs That The Entertainer Performed At For Purposes Of Determining Individual Class Member Compensation.** .................................. 31

     5.6.5    **Time For Distribution Of Settlement Payments To Class Members** ................................................................................ 31

     5.6.6    **No Reversion Of Unpaid Or Uncashed Amounts.** ....................... 32

     5.6.7    **Judgment in the Event of Default.** ........................................... 32

6.     TAXATION ........................................................................................ 32

7.     RELEASES AND COVENANTS ......................................................... 33

     7.1     **Release By California Class Members.** ....................................... 33

     7.2     **Release By FLSA Settlement Class Members** ............................. 34

     7.3     **Covenant Not To Sue** ............................................................... 35

## TABLE OF CONTENTS (cont.)

**Page**

8.    TERMINATION OF SETTLEMENT .......................................................36

    8.1    **Timing And Events Sufficient To Trigger Termination**.

    8.2    **Effect Of Termination**. ...................................................................36

9.    PRESS CONTACTS/PUBLICITY .......................................................37

10.   MISCELLANEOUS PROVISIONS .....................................................38

    10.1   **No Assignment Of Rights**.................................................................38

    10.2   **No Admission Of Wrongdoing**.........................................................38

    10.3   **Class Certification**. ...........................................................................39

    10.4   **Destruction Of Documents Produced**...............................................39

    10.5   **CAFA Notice**......................................................................................39

    10.6   **Amendment**........................................................................................39

    10.7   **Arms-Length Negotiations**................................................................39

    10.8   **Authority To Execute**. .......................................................................39

    10.9   **Cooperation Of The Parties**. .............................................................39

    10.10  **Effective Agreement; Counterparts**. .................................................40

    10.11  **Entire Agreement**. .............................................................................40

    10.12  **Force Majeure**...................................................................................40

    10.13  **Governing Law**. ................................................................................40

    10.14  **Jurisdiction**.......................................................................................41

    10.15  **Notice**. ...............................................................................................41

    10.16  **Party's Reliance On Own Knowledge**. ..............................................41

    10.17  **Severability**.......................................................................................41

    10.18  **Use Of Headings And Captions In Agreement**. ...............................42

    10.19  **Computation of Time**. .......................................................................42

## TABLE OF CONTENTS (cont.)

**Page**

10.20  **Waiver**. .................................................................................................42

10.21  **Cooperation Of Class Counsel**. ......................................................42

**STIPULATION AND SETTLEMENT AGREEMENT**

This Stipulation and Settlement Agreement is entered into as of December 16, 2019, by and between (1) Plaintiffs Adriana Ortega, Roberta Friedman, Adriana Avelar and Sheyenne McCrea, individually and on behalf of the Settlement Classes; and (2) Defendants Santa Barbara Hospitality Services, Inc., The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., Santa Barbara Hospitality Services, Inc., DG Hospitality Van Nuys, LLC, Rouge Gentlemen's Club, Inc., Brookhurst Venture, LLC, City of Industry Hospitality Venture, Inc., Farmdale Hospitality Services, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., PNM Enterprises, Inc., Rialto Pockets, Incorporated, Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., The Oxnard Hospitality Services, Inc., Washington Management, LLC, Brookhurst Venture Anaheim, LLC, City of Industry Hospitality Venture, LLC, Farmdale Hospitality Services, LLC, Inland Restaurant Venture I, LLC, Midnight Sun Enterprises, LLC, Olympic Avenue Ventures, LLC, Platinum SJ, Enterprise, PNM Enterprises Santa Ana, LLC, Rialto Pockets, LLC, Santa Barbara Hospitality Services, LLC, Santa Maria Restaurant Enterprises, LLC, The Oxnard Hospitality Services, LLC, and Washington Management Los Angeles, LLC. Words that have initial capitalizations (such as "Agreement") are used in this Agreement as defined in Section 1 herein.

This Agreement settles collective claims brought pursuant to the provisions of the Fair Labor Standards Act (29 U.S.C. §§ 201 et seq. the "FLSA"), class action claims under various state labor laws pursuant to the Federal Rules of Civil Procedure, Rule 23 ("Rule 23"), and claims brought under California Labor Code Section 2699 known as the California Private Attorney General Act ("PAGA"). Upon execution of this Agreement, final approval by the Court, the Agreement becoming Effective (following any appeal periods), it is the express intention of the

Parties to fully, finally and forever resolve, discharge, and settle all Claims which were brought or could have been brought in the Actions, by the Class Representatives, by any "opt-in" FLSA Class Member, all PAGA claims, or by any Class Member who declined to opt out of this Agreement as set forth below and who therefore constitute a member of the California Settlement Class.

1.     **DEFINITIONS.**

1.1     "Actions" mean collectively the lawsuits entitled *Lauren Byrne v. Santa Barbara Hospitality, Inc., et al.*, Case No. 5:17-CV-00527 JGB (KKx); *Jenetta L. Bracy v. DG Hospitality Van Nuys, LLC, et al.*, Case No. 5:17-CV-00854 JGB (KKx); *Adriana Ortega v. The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc. and Midnight Sun Enterprises, LLC*, Case No. 5:17-cv-00206 JGB (KKx), all of which were filed in the United States District Court for the Central District of California; as well as *Shala Nelson v. Farmdale Hospitality Services, LLC, dba Blue Zebra Gentleman's Club; Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting, and DOES 1-20, inclusive*, Case No. BC671852; filed in the Los Angeles Superior Court.

1.2     "Administrative Costs" means all administrative costs of settlement, including, but not limited to, Class Notice, mailing of the Class Notice, internet notice on the Settlement Administrator's website, claims administration, and any reasonable fees and costs incurred or charged by the Settlement Administrator, in connection with the execution of its duties under this Agreement.

1.3     Intentionally Left Blank

1.4     "Attorney Fee and Expense Award" means such funds that Class Counsel or any other attorney may receive either directly from Defendants, or through an order of the Court, to compensate them for their time and litigation expense incurred in the Actions and in this Settlement.

2

1.5    "*Bracy* Action" means the case of *Jenetta Bracy v. DG Hospitality Van Nuys,*

*LLC; The Spearmint Rhino Companies Worldwide, Inc.; Spearmint Rhino Consulting*

*Worldwide, Inc.; Dames N' Games; John Does #1-10; and XYZ Corporations #1-10* filed in the

United States District Court for the Central District of California, Case No. 5:17-cv-00854-JGB

(KKx).

1.6    "*Byrne* Action" means the case of *Lauren Byrne v. Santa Barbara Hospitality,*

*Inc., The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting*

*Worldwide, Inc. and Santa Barbara Hospitality Services, LLC* filed in the United States District

Court for the Central District of California, Case No. 5:17-CV-00527 JGB (KKx).

1.7    "*Byrne* Agreement" or "*Byrne* Settlement Agreement" means the Stipulation and

Settlement Agreement in the *Byrne* Action appr oved by this Court on December 14, 2018..

1.8    "CAFA Notice" means the notice to be sent by the Settlement Administrator to

appropriate federal and state officials pursuant to the requirements of the Class Action Fairness

Act of 2005, 28 U.S.C. § 1715(b).

1.9    "California Class Period" means the period of time from October 30, 2017 through

the date of entry of the Preliminary Approval Order.

1.10    "California Released Claims" means Claims, as defined below, for participating

California Settlement Class Members who performed at a Club located in the State of California

during the California Class Period; as well as the following: (a) Any and all Claims pursuant to

the California Labor Code, including but not limited to Claims, whether expressly plead or not

under or pursuant to California Labor Code sections 200-204, 206.5, 207, 208, 210-214, 216, 218,

218.5, 218.6, 221, 222.5, 223, 225.5, 226, 226.3, 226.7, 226.8, 227, 227.3, 245-249, 351, 353,

432.5, 450, 510, 512, 551-552, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1194.3, 1197, 1197.1,

1198, 2698 et seq. (PAGA), 2753, 2802, 2804; (b) Claims pursuant to California Code of Civil

Procedure section 1021.5; (c) Claims pursuant to California Code of Regulations, Title 8, sections 11010 and 11040; (d) Claims pursuant to Industrial Welfare Commission Wage Orders; (e) Claims pursuant to California Business and Professions Code Sections 17200, et seq., and sections 17500, et seq.; (f) All Claims, including common law Claims, arising out of or related to the statutory causes of action listed in this section 1.11; (g) Claims under California common law to recover any alleged tip, expense or other payment.

1.11    "California Releasing Persons" means each and every California Settlement Class Member who did not timely and validly opt-out and their respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in interest, and assigns.

1.12    "California Settlement Class" means the group of individuals who performed as entertainers and in conjunction therewith have provided nude, semi-nude, and/or bikini entertainment for customers from October 30, 2017 through the date of entry of the Preliminary Approval Order as "LLC Members" or "independent contractors" during any portion of the foregoing time period at the Clubs owned by Brookhurst Venture, LLC (California Girls – Anaheim, CA); City of Industry Hospitality Venture, Inc. (Spearmint Rhino – City of Industry, CA); Farmdale Hospitality Services, Inc. (Blue Zebra – North Hollywood, CA); Inland Restaurant Venture I, Inc. (Spearmint Rhino – Van Nuys, CA); Midnight Sun Enterprises, Inc. (Spearmint Rhino – Torrance, CA); PNM Enterprises, Inc. (California Girls – Santa Ana, CA); Olympic Avenue Venture, Inc. (Spearmint Rhino – Los Angeles, CA); The Oxnard Hospitality Services, Inc. (Spearmint Rhino – Oxnard, CA); Rialto Pockets, Incorporated (Spearmint Rhino – Rialto, CA); Platinum SJ, Enterprise (Spearmint Rhino – San Jose); Rouge Gentlemen's Club, Inc. (Dames N Games – Van Nuys, CA); Santa Barbara Hospitality Services, Inc. (Spearmint Rhino – Santa Barbara, CA); Santa Maria Restaurant Enterprises, Inc. (Spearmint Rhino – Santa Maria,

CA); and Washington Management, LLC (Dames N Games – Los Angeles, CA) during the California Class Period. The California Settlement Class also includes individuals who opted out of the <u>Byrne</u> Action, but who worked in California. The Class Representatives for this class are Adriana Ortega, Roberta Friedman, Adriana Avelar and Sheyenne McCrea.

      1.13   "California Settlement Class Member" means each of those individuals who are members of the California Settlement Class.

      1.14   "Cash Payment" means the cash payment to a Class Member who has elected and is eligible to receive such consideration in exchange for Class Member's releases hereunder of Defendants.

      1.15   "Claim(s)" means, when used alone herein and not as part of another specifically defined phrase, any and all, present and future claims, actions, demands, causes of action, suits, debts, obligations, damages, and rights or other assertions of liability or wrongdoing, or any conceivable kind, nature or description whatsoever, whether known or unknown, whether existing or potential, whether fixed or contingent, whether asserted or not, recognized now or hereafter and whether expected or unexpected, pursuant to any theory of recovery and whether at law, in equity or otherwise, including, but not limited to those based in contract, tort, common law, federal, state or local law, statute, ordinance, or regulation, and whether for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs or disbursements (including but not limited to those incurred by Class Counsel or any other counsel representing the Class Representatives or any Settlement Class Members, other than those expressly awarded by the Court in an Attorney Fee and Expense Award authorized by this Agreement), that a Person may have.

      1.16   "Claims Period" means the time period between the date that the Settlement Administrator distributes the Class Notice and the date by which all claims must be submitted to

the Settlement Administrator for consideration, of which the duration shall be ninety (90) days.

Any claim submitted to the Settlement Administrator that is postmarked on or before the ninetieth

(90) day after Initial Notice is valid; all others postmarked after that date shall be deemed

untimely and not valid, other than as set forth herein.

     1.17   "Class Counsel" means Shannon Liss-Riordan  of Lichten & Liss-Riordan, P.C.

     1.18   "Class Member(s)" or "Member(s) of the Settlement Class(es)" means an

individual member or members of the Settlement Class.

     1.19   "Class Notice" means the notice submitted in conjunction with the proposed

Preliminary Approval Order, in substantially the form as Exhibit 2, attached hereto.

     1.20   "Class Notice Documents" means the Class Notice, a blank W-9 Form, and a

Claim Form.

     1.21   "Class Representatives" means Adriana Ortega, Roberta Friedman, Adriana

Avelar and Sheyenne McCrea, or any other person(s) duly appointed as additional or successor

representatives of the Class.  Each of these individuals may be referred to individually as "Class

Representative."

     1.22   "Clubs" or "Existing Club(s)" means: California Girls – Anaheim, CA; , California

Girls, Santa Ana, CA; Spearmint Rhino – City of Industry, CA; Spearmint Rhino – Los Angeles,

CA; Spearmint Rhino – Oxnard, CA; Spearmint Rhino – Rialto, CA; Spearmint Rhino – Santa

Barbara, CA; Spearmint Rhino – Santa Maria, CA; Spearmint Rhino – Torrance, CA; Spearmint

Rhino – San Jose, CA; Spearmint Rhino – Van Nuys, CA; Blue Zebra – North Hollywood, CA;

Dames N' Games – Los Angeles, CA; Dames N' Games – Van Nuys, CA, individually

"Existing Club" or collectively "Existing Clubs."

     1.23   "Club Owners" means: Brookhurst Venture LLC (California Girls – Anaheim,

CA); City of Industry Hospitality Venture, Inc. (Spearmint Rhino – City of Industry, CA);

Farmdale Hospitality Services, Inc. (Blue Zebra – North Hollywood, CA); Inland Restaurant

Venture I, Inc. (Spearmint Rhino – Van Nuys, CA); Midnight Sun Enterprises, Inc. (Spearmint

Rhino – Torrance, CA); Olympic Avenue Venture, Inc. (Spearmint Rhino – Los Angeles, CA);

Platinum SJ Enterprise (Spearmint Rhino – San Jose); PNM Enterprises, Inc. (California Girls –

Santa Ana, CA); Rialto Pockets, Incorporated (Spearmint Rhino – Rialto, CA); Rouge

Gentlemen's Club, Inc. (Dames N Games – Van Nuys, CA); Santa Barbara Hospitality

Services, Inc. (Spearmint Rhino – Santa Barbara, CA); Santa Maria Restaurant Enterprises, Inc.

(Spearmint Rhino – Santa Maria, CA); The Oxnard Hospitality Services, Inc. (Spearmint Rhino

– Oxnard, CA); Washington Management, LLC (Dames N Games – Los Angeles, CA).

     1.24   "Companies" means The Spearmint Rhino Companies Worldwide, Inc.

     1.25   "Consulting" means Spearmint Rhino Consulting Worldwide, Inc.

     1.26   "Court" means the United States District Court for the Central District of

California.

     1.27   "*Cy Pres* Beneficiary" means one or more 501(c)(3) organizations to be named

prior to Final Approval and approved by the Court.

     1.28   "Dance Day(s)" means an individual day or any part thereof, or any individual day

in conjunction with the immediately following consecutive day until a Club's closing for business

on such day, wherein a Member of the Settlement Classes provided entertainment at one of the

Clubs, which shall each be considered an individual Dance Day.  For purposes of this Settlement,

"dance days" only includes dates after October 30, 2017.

     1.29   "Defendants" means Brookhurst Venture LLC; Santa Barbara Hospitality

Services, Inc., The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting

Worldwide, Inc., Santa Barbara Hospitality Services, LLC, DG Hospitality Van Nuys, LLC,

Platinum SJ, Enterprise, Rouge Gentlemen's Club, Inc., City of Industry Hospitality Venture,

Inc., Farmdale Hospitality Services, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., PNM Enterprises, Inc., Rialto Pockets, Incorporated, Santa Maria Restaurant Enterprises, Inc., The Oxnard Hospitality Services, Inc., Washington Management, LLC, Brookhurst Venture Anaheim, LLC, City of Industry Hospitality Venture, LLC, Farmdale Hospitality Services, LLC, Inland Restaurant Venture I, LLC, Midnight Sun Enterprises, LLC, Olympic Avenue Ventures, LLC, PNM Enterprises Santa Ana, LLC, Rialto Pockets, LLC, Santa Maria Restaurant Enterprises, LLC, The Oxnard Hospitality Services, LLC, and Washington Management Los Angeles, LLC, as set forth in the Second Amended Complaint.

1.30    "Defendants' Counsel" means Peter E. Garrell, Esq., and John M. Kennedy, Esq. of FORTIS LLP.

1.31    "Effective Date" means the day after the Judgment is no longer subject to appeal or review (or further appeal or review), whether by exhaustion of any possible appeal, lapse of time, or otherwise.

1.32    "Entertainer(s)" means persons who dance, perform, and/or entertain, or who have danced, performed or entertained, on the premises of one of the Clubs, but excludes, for those individuals who perform or who have performed at a Club, persons who provide or provided services as "headliner" or "feature" performers unless such individual was otherwise qualified as a Class Member.

1.33    "Fairness Hearing" means the hearing to be held by the Court to consider whether to issue an order of final approval of the Settlement pursuant to Federal Rule of Civil Procedure 23.  At the Fairness Hearing, the Court will also hear any other pertinent matters, including what legal fees, compensation, and expenses should be awarded to Class Counsel, and to the Class Representatives.

1.34    "FLSA" means the Federal Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*

1.35    "FLSA Class Period" means the period of time from October 30, 2017 through the date of entry of the Preliminary Approval Order for the *Ortega* Agreement.

1.36    "FLSA Releasing Persons" means each and every FLSA Settlement Class Member and her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest and assigns, who opted into the FLSA Settlement Class by timely submitting a valid Claim Form.

1.37    "FLSA Settlement Class" means those individuals who are members of the California Settlement Class who elected to participate in the Settlement and timely submitted a valid Claim Form and who performed at one or more of the Clubs as entertainers and in conjunction therewith have provided nude, semi-nude and/or bikini entertainment for customers at the Clubs as "LLC Members" or "independent contractors" during any portion of the  the FLSA Class Period.

1.38    "FLSA Settlement Class Member" means those individuals who are members of the FLSA Settlement Class.

1.39    "Gross Cash Settlement Amount" shall mean and have the value of three million six hundred fifty thousand dollars ($3,650,000).  The Gross Cash Settlement Amount is accepted as full and adequate consideration for the Settlement and releases provided herein.

1.40    "Initial Mailing" means the mailing of the Class Notice Documents that will take place pursuant to this Settlement Agreement.

1.41    "Judgment" means the Order entering final approval and dismissing all claims in this Action with prejudice.

1.42   "Lead Class Counsel" means Shannon Liss-Riordan, Esq. of Lichten & Liss-Riordan, P.C.

1.43   "LLC Member" or "Owner" means an individual who pursuant to her election of membership as an owner in a limited liability company performed as an entertainer, providing nude, semi-nude, and/or bikini entertainment for customers at one or more of the Existing Clubs.

1.44   "LWDA" means the California Labor and Workforce Development Agency.

1.45   "Member(s) of Settlement Class(es)" or "Class Member(s)" means any individual who is a member of the Settlement Class(es).

1.46   "Net Settlement Amount" means the balance remaining after Court-approved attorneys' fees and costs, incentive awards and penalties allocated to the California Labor Code Section 2699 are subtracted from the Gross Cash Settlement Amount.

1.47   Intentionally left blank.

1.48   "*Ortega* Action" means the case of *Adriana Ortega v. The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc. and Midnight Sun Enterprises, LLC* filed February 3, 2017, in the United States District Court for the Central District of California, Eastern Division; Case No. 5:17-cv-00206-JGB-KK.

1.49   "*Ortega* Agreement" or "*Ortega* Settlement Agreement" means this Stipulation and Settlement Agreement.

1.50   "Party" and "Parties" shall mean Plaintiffs and Defendants, individually or collectively.

1.51   "Person" means any individual, corporation, partnership, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, governmental and any political subdivision thereof, or any other type of business or legal entity.

1.52    "Plaintiffs" means Adriana Ortega, Roberta Friedman, Adriana Avelar and Sheyenne McCrea.

1.53    "Preliminary Approval Order" means the order entered by the Court preliminarily approving the Settlement.

1.54    "Released Persons" means Defendants, the Clubs, the Existing Clubs, the Club Owners, the Club and Entertainer LLCs, Consulting, Companies, and WPS Entertainment, Inc. including, but not limited to, their current or former officers, directors, trustees, employees, agents, insurers, attorneys, auditors, accountants, experts, parent companies, subsidiaries, affiliates, divisions, stockholders, members, heirs, executors, representatives, predecessors, successors, and/or assigns, insurers, reinsurers, contractors, representatives, benefit plans sponsored or administered by the Clubs, the Existing Clubs, the Club Owners, the Club and Entertainer LLCs, Consulting, or Companies and WPS Entertainment, Inc.

1.55    "Settlement" means the compromise and settlement embodied in this Agreement.

1.56    "Settlement Administrator" means Kurtzman Carson Consultants, LLC (KCC, LLC).

1.57    "Settlement Classes" means all individuals who are California Class Members or FLSA Settlement Class Members.

1.58    "Unknown Claims" means any released claims that the Class Representatives and the Members of the Settlement Classes do not know or suspect to exist in their favor at the time of the release of the Released Persons which, if known by her, might have affected her settlement with and release of the Released Persons, or might have affected her decision not to object to this Settlement.  With respect to any and all claims or potential claims the Class Representatives and the Class Members may have, upon the Effective Date, the Class Representatives and the Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly

11

waived, and may not assert in any proceedings as a bar to or voiding in any way the effectiveness

of this release, the provisions, rights and benefits of any provisions of the Laws of the United

States (excluding any and all claims arising under the FLSA (which are addressed in Paragraph

9.9)) and any claims arising or of any state which provides that a general release does not extend

to claims which a party does not know or expect to exist in its favor at the time of executing the

release, which if known to the party may have materially affected the Settlement.  Upon the

Effective Date, the Class Representatives and each Class Member shall be deemed to have, and by

operation of the Judgment (excluding any and all claims arising under the FLSA (which are

addressed in Paragraph )) shall have, expressly waived the provisions, rights and benefits of

California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor or
> releasing party does not know or suspect to exist in his or her favor
> at the time of executing the release, which if known by him or her
> would have materially affected his or her settlement with the debtor
> or released party.

The Class Representatives and any and all Members of the Settlement Classes may later discover

facts in addition to or different from those which they now know or believe to be true with

respect to the subject matter of the released claims, but the Class Representatives and each Class

Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment

shall have, fully, finally, and forever settled and released any and all released claims, known or

unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or

hidden, which now exist, or heretofore have existed, upon any theory of law or equity now

existing or coming into existence in the future, including but not limited to conduct which is

negligent, intentional, with or without malice, or a breach of any duty, law or rule, without

regard to the subsequent discovery or existence of such different or additional facts (excluding

any and all claims arising under the FLSA (which are addressed in Paragraph 9.9)).  The Class

Representatives and each Class Member shall be deemed by operation of the Judgment to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

    1.59    "Valid Claim(s)" means a Claim Form and W-9 Form duly completed and timely submitted by a Class Member in accordance with the requirements set forth in this Agreement.

## 2.    BACKGROUND FACTS

    2.1    **The 2017 Cases**.

        2.1.1    **The *Ortega* Action**.  On February 3, 2017, the case of *Adriana Ortega v. The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc. and Midnight Sun Enterprises, LLC* was filed in the United States District Court for the Central District of California, Eastern Division; Case No. 5:17-cv-00206-JGB-KK.  On April 14, 2017, Plaintiff Adriana Ortega filed a first amended complaint adding PAGA claims. Plaintiff Ortega purports to represent a California class of entertainers for alleged violations of the Fair Labor Standards Act (FLSA) including alleged misclassification as independent contractors and other claims and has recently indicated an intent to expand the putative class to a "national class."  The *Ortega* Action is pending before the Honorable Jesus G. Bernal. On June 12, 2017, the Court ruled on three motions pending in the *Ortega* Action:  (1) Plaintiff's motion for class notice to entertainers classified as 1099 independent contractors pursuant to 29 U.S.C. § 216(b) (*Ortega* Court Dkt. #16); (2) Defendants' motion to compel arbitration pursuant to a written arbitration agreement (*Ortega* Court Dkt. #18); and (3) Defendants' motion to stay the action (*Ortega* Court Dkt. #21) pending a ruling from the

United States Supreme Court on the validity of class action waivers in *Morris*.[1]  In particular, the Court in the *Ortega* Action ruled as follows:

> "As the above discussion makes clear, the Supreme Court's decision in *Morris* will control the outcome of this case:  if the Supreme Court affirms the Ninth Circuit's decision, Plaintiff will likely be able to move forward on her collective action claims in this Court; if it issues a reversal, Plaintiff will be bound by the [Arbitration] Agreement and required to individually arbitrate her claims. Given the centrality of *Morris* to the outcome here, the Court finds that a stay–at least in some form–may be appropriate to allow for resolution on the question of whether the arbitration agreement is enforceable despite its bar on collective action."

(Court Dkt. #48 at p. 14.)  In its conclusion, the *Ortega* Court denied Defendants' motion to compel arbitration pending a decision by the Supreme Court in *Morris*; denied Plaintiff's motion for conditional certification without prejudice but granted, in part, Defendant's motion to stay. (*Ortega* Court Dkt. #48 at p. 14.)

Thereafter, the *Ortega* Action was stayed for a period of time but after the stay was lifted, the Parties refiled: (1) Plaintiff's motion for class notice to entertainers pursuant to 29 U.S.C. § 216(b) (*Ortega* Court Dkt. #68); (2) Defendants' motion to compel arbitration pursuant to a written arbitration agreement (*Ortega* Court Dkt. #69); and (3) Defendants' motion to stay the

---

[1] In *Epic Systems Corp. v. Lewis* (U.S. Jan. 13, 2017) (No. 16-285); *Ernst & Young LLP v. Morris* (U.S. Jan. 13, 2017) (No. 16-300), and *NLRB v. Murphy Oil USA, Inc.* (U.S. Jan. 13, 2017) (No. 16-307) (collectively referred to herein as "Morris"), the United States Supreme Court granted certiorari on the question of: "Whether an agreement that requires an employer and an employee to resolve employment-related disputes through individual arbitration, and waive class and collective proceedings, is enforceable under the Federal Arbitration Act, notwithstanding the provisions of the National Labor Relations Act."

action (*Ortega* Court Dkt. #70).  The Court granted Defendants' Motion to Compel Claims of Adrianna Ortega to Arbitration; granted, in part, Plaintiffs' Motion for Preliminary Certification of a Collective Action; and granted in part Defendants' Motion to Stay Plaintiffs' PAGA Claims (*Ortega* Court Dkt. #83)

       2.1.2   **The *Byrne* Action**.  On March 21, 2017, the case of *Lauren Byrne v. Santa Barbara Hospitality, Inc., The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc. and Santa Barbara Hospitality Services, LLC* was filed in the United States District Court for the Central District of California, Case No. 5:17-cv-00527-SVW-SP.  Plaintiff Byrne purports to represent a nationwide class of entertainers for alleged violations of the FLSA and other claims.  Jennifer Diaz, Bianca Haney, Bambie Bedford, Cynthia Garza, Jennifer Disla, and Carmen Ramos "opted in" to the *Byrne* Action.  (*Byrne* Court Dkt. #s 28, 30, 33, 56).  On May 10, 2017, Judge Bernal deemed the *Byrne* Action "related" to the *Ortega* Action and the *Byrne* Action was transferred to Judge Bernal.  (*Byrne* Court Dkt. #38.)  In *Byrne*, the Defendants filed a motion to stay based upon *Morris* and Plaintiffs filed a motion for class notice.  The parties stipulated to continue the hearing dates on those motions to November 13, 2017.  On August 29, 2017, the Court granted Intervenors the right to intervene. (Byrne Ct. Dkt. #61.)  On September 6, 2017, the Intervenors filed a Complaint In Intervention. (Byrne Ct. Dkt. #62.)

       2.1.3   **The *Bracy* Action**.  On May 3, 2017, the case of *Jenetta Bracy v. DG Hospitality Van Nuys, LLC; The Spearmint Rhino Companies Worldwide, Inc.; Spearmint Rhino Consulting Worldwide, Inc.; Dames N' Games; John Does #1-10; and XYZ Corporations #1-10* was filed in the United States District Court for the Central District of California, Case No. 5:17-cv-00854.  Plaintiff Bracy purports to represent a nationwide class of entertainers for alleged violations of the FLSA.  In the interim, Houston Isabella (*Bracy* Court Dkt. #23) "opted in" to

the *Bracy* Action.  On July 24, 2017, the *Bracy* Action was transferred to Judge Bernal for all

purposes.  The Court entered a stipulation to stay the *Bracy* Action until October 31, 2017.

### 2.1.4   The *Nelson* Action.

On August 15, 2017, the case of *Shala Nelson v. Farmdale Hospitality Services, LLC,*

*dba Blue Zebra Gentleman's Club; Spearmint Rhino Companies Worldwide, Inc., Spearmint*

*Rhino Consulting, and DOES 1-20,* was filed in the Los Angeles Superior Court, Case No.

BC671852.  Plaintiff Nelson purported to represent a California class of entertainers for alleged

violations of the Private Attorney General Act ("PAGA") and claims that entertainers  are

misclassified.  The *Nelson* Action was dismissed with prejudice on August 6, 2019

### 2.2   **Final Approval in Byrne.**

Following the above and after a mediation attended by counsel for the *Byrne* and *Bracy*

Plaintiffs and counsel for Defendants, the Parties in *Byrne* and *Bracey* entered into a settlement

which after being presented to the Court and additional briefing requested by the Court from all

Parties including Objectors in the *Ortega* Action resulted in Final Approval being granted on

December 14, 2018 (*Byrne* Court Dkt. #178) and an appeal being filed on January 11, 2019 by

Objectors (*Byrne* Court Dkt. #181).

### 2.3   **Negotiation and Mediation.**

In light of the above competing considerations, Defendants' Counsel along with

Plaintiff's Counsel in the *Ortega* Action, *Byrne* Action and *Bracey* Action participated in an all-

day mediation on May 22, 2019 in Boston Massachusetts in front of experienced class-action

mediator, Charles Stohler, Esq. The Parties engaged in extensive arms-length negotiations with a

view toward achieving substantial benefits for each Class Member , while at the same time

avoiding the cost, delay and risk and uncertainty of further litigation, trials and appellate review.

After the actions were filed and during the course of negotiations, Defendants have asserted and continue to assert, in discussions with Class Counsel, that they have substantial defenses to the Claims brought by Plaintiffs.  Plaintiffs, for their part, dispute the validity of the defenses.  Further, in the interim and based on the rapidly developing area of law, all but one of the Existing Clubs have converted all Entertainers to W-2 Employees and eliminated the choice previously available to entertainers of being LLC Members or Employees.  This has resulted in a disruption to business operations but further encouraged all Parties to settle the existing Actions, albeit requiring a payment plan to fully satisfy the obligations hereunder.   Thus, in negotiating this Agreement, the Parties focused upon a number of risk factors which could have significant impacts upon each Parties' position should this matter go forward to trial, including the Defendants' ability to satisfy any potential judgment.  Thus, in entering into this Agreement, the Parties considered the following risk factors:

### 2.6.1   **Arbitration.**

This Agreement recognizes that but for the *Byrne* Agreement and the *Ortega* Agreement, a substantial majority of Class Members may have to proceed by individual arbitration.

### 2.6.2   *Trauth* **Injunctive Relief**

An additional risk is that Defendants contend that they properly implemented the injunctive relief ordered by Judge Virginia Phillips in *Trauth v. Spearmint Rhino Consulting Worldwide, Inc., et al.*, Case No. EDCV09-1316 and allowed the entertainers to choose to be employees or owners.  Plaintiffs intended to dispute the merits of this defense.

### 2.6.3   **Offsets**

Defendants asserted as a defense that payments already made to Class Members could be used to offset any claims for unpaid wages.  Plaintiffs intended to dispute the merits of this

defense and have asserted at all times that no "offset" is permissible under the FLSA or

California law.

### 2.6.4 **Other Defenses**

Defendants deny each and every one of the Claims that are asserted, that will be asserted

in the Second Amended Complaint, or could be asserted by the Plaintiffs in the Actions;

including but not limited to misclassification; entitlement to employment wages, benefits or

penalties, or other compensation, and any claims of joint employer liability.  Defendants'

decision to enter into this Agreement and to conditionally consent to class treatment of Plaintiffs'

claims is not and shall not be construed as any form of admission of liability.  Rather, all liability

is expressly, generally and specifically denied by each and every one of the Defendants.

Notwithstanding the foregoing and the differing views on the merits of the Plaintiffs'

Claims, and in measured consideration of the forgoing and as a consequence of the negotiations

between Class Counsel and Defendants' Counsel; and the extensive investigations, analysis and

discovery, the Parties agree to settle the Actions under the terms and conditions memorialized in

this Agreement; believing such Settlement to be fair, reasonable, adequate, and in the best

interests of the Class Members and Defendants.

Thus, in consideration of the foregoing and of the promises and mutual covenants

contained herein, and other good and valuable consideration, the adequacy of which is

acknowledged, it is hereby agreed by and among the Parties as follows:

## 3.     **TERMS OF THE SETTLEMENT AGREEMENT**

### 3.1     **Class Notice Provided**.

#### 3.1.1     **Initial Mailed Notice**.  Defendants and the Clubs will provide the

Settlement Administrator only, to the extent available in Defendants' electronic records, contact

information for the Members of the California Settlement Class.  Within twenty (20) days after

being provided with contact information from Defendants and after performing national change of address updates to the Class Member list using the database maintained by the United States Postal Service, the Settlement Administrator shall mail and email to each Member of the California Settlement Class a copy of the Class Notice Documents.  If the Class Notice Documents mailed and e-mailed to a Class Member are returned within thirty (30) days of the Initial Mailing, with a forwarding address provided by email or the Postal Service, the Class Notice Documents will be re-mailed or emailed, within ten (10) days, to the forwarding address provided, and the completed Class Notice Documents are then due within ninety (90) days of mailing of the original notice.  If the Class Notice Documents are returned from the initial notice mailing, without a forwarding address, thirty (30) days after the Initial Mailing, provided by the Postal Service, the Settlement Administrator shall perform a skip trace for those individuals in an attempt to locate a more current address.  If the Settlement Administrator is successful in locating a new address, , it will re-mail the Class Notice Documents to the Member of the Settlement Classes and any claims are due within ninety (90) days of mailing of the original notice.  If, after a second mailing, the Class Notice Documents are returned as undeliverable, or were otherwise designated by the Postal Service as having been sent to an invalid address, the Settlement Administrator has no further obligation to take steps to locate the address of the actual or potential Class Member to whom the Class Notice Documents are sent.

      3.1.2   **Reminder Notice**.  Fourteen (14) days before the end of the Claims Period the Claims Administrator shall send by email only a reminder notice to the last known e-mail address of all California Class Members which shall state only:

         "Please allow this e-mail to remind you that you have only fourteen (14) more days to make a claim, object or opt-out of the Settlement in the matter of *Adriana Ortega v. The Spearmint Rhino Companies Worldwide, Inc., et al.*  This case was

filed in the United States District Court for the Central District of California, Eastern Division; Case No. 5:17-cv-00206-JGB-KK.

In order to participate in the Settlement, you may access and complete the claim form electronically through the following link:[**link**]

For questions please call the Claims Administrator KCC at 866-644-9959, or Counsel for the *Ortega* Class, Shannon Liss-Riordan at 617-994-5800.

      3.1.3   **Internet Notice**.  The Settlement Administrator shall place the Class Notice Documents (including the Claim Form), a copy of the Second Amended Complaint, the Settlement Agreement, the Preliminary Approval Order, and a reference to the PACER website for the United States District Court for the Central District of California on its website within five (5) days of entry of the Preliminary Approval Order; these documents shall remain on that website through the Effective Date.  The website is referenced in the Class Notice.  There shall not be any other website created or maintained concerning the Settlement.

      3.1.4   **Posted Notice In Existing Clubs**.  The Existing Clubs shall post a copy of the Class Notice in the dressing rooms of the Existing Clubs within five (5) days of entry of the Preliminary Approval Order, and The Existing Clubs may take down the Class Notice from their dressing rooms the day following the close of the time period for Class Members to file a claim or opt out.

      3.1.5   **Additional Reminder Notice**.  Should the Parties agree that an additional reminder notice would be beneficial to the California Class Members, they will cooperate in good faith to accomplish such notice.

   3.2   **Claims, Objections And Opt-Outs**.

      3.2.1   **Claims**.  In order to receive their share of the Settlement, Class Members must submit Claims within ninety (90) days after the Settlement Administrator mails the Initial

Notice.  Late claims may be accepted by agreement of the Parties based on a showing of good

cause, as long as acceptance of the late claim will not delay payment to Class Members who

timely submit a valid Claim Form.

        3.2.2   **Objections**.  Any Class Members objecting to the Settlement must file

written objections with the Court and mail same to Class Counsel within ninety (90) days after

the Settlement Administrator mails the Initial Notice.  Any Class Member who does not file and

provide an objection and/or notice of intention to appear in complete accordance with the

deadlines and other requirements set forth herein and in the Class Notice will be deemed to have

waived any objections to the Settlement and shall be barred from speaking or otherwise

presenting any views at the Fairness Hearing or from pursuing any appeals.  The Class

Representatives and Defendants are permitted to respond in writing to objections no later than

five (5) days before the Fairness Hearing.  The Class Representatives waive any right to object

to the Settlement, and they endorse the Settlement as fair, reasonable, and adequate and in the

best interests of the Settlement Classes.  Objections can only be made by persons who are valid

Class Members and have not opted out.  If a Member of the Settlement Classes wants to object

to the Settlement, but wishes to receive her share of the Settlement payments in the event the

Settlement is approved, she must have filed a Valid Claim.  If the Court approves the Settlement

despite any objections, and the Member of the Settlement Classes has not submitted a Valid

Claim, she will not receive any Settlement payment and will have released the released claims

(with the exception of the FLSA claims).

        3.2.3   **Opt-outs**.  Any Member or potential Member of the California

Settlement Class who wishes to opt-out of the Settlement Classes has to mail to the Settlement

Administrator, at the address that is set forth in the Class Notice, a signed request for exclusion

from the Settlement Classes, postmarked no later than ninety (90) days after mailing of Initial

Class Notice.  In order to be valid, the request to opt-out must clearly reference the *Ortega* matter, state unequivocally that the individual wishes to "opt out" or exclude himself or herself from the Settlement, and be signed by the Class Member.    The deadline to file an opt-out/request for exclusion applies notwithstanding such Class Member's contention regarding non-receipt or late receipt of the Class Notice Documents.  Class Counsel will file copies of all timely requests for such exclusion, not timely rescinded, with the Court prior to the Fairness Hearing.  Class Members are permitted to withdraw or rescind their opt-out statements by submitting a "rescission of opt-out" statement to the Settlement Administrator within the Claims Period.  The Class Representatives waive any right to opt-out of the Settlement Classes.  If a Member of the Settlement Classes submits both a Claim Form and a request for exclusion (regardless of which form is submitted first or last), the request for exclusion will be invalid and the Member of the Settlement Classes will be included in the Settlement Classes and be bound by the terms of the Settlement.

4.      **SECOND AMENDED COMPLAINT, SUBMISSION OF MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH SETTLEMENT ADMINISTRATOR DECLARATION**

      4.1      **Second Amended Complaint**.  A Second Amended Complaint (to be drafted by the Parties following preliminary approval) shall be filed promptly following preliminary approval naming and identifying the class representatives for the California and FLSA subclasses and adding representatives as plaintiffs.  Defendants will stipulate to the filing of the Second Amended Complaint described herein for purposes of this Settlement only and Defendants need not file a responsive pleading to the Second Amended Complaint.  The Parties agree that the filing of the Second Amended Complaint for settlement only will streamline the settlement process.  The Parties further stipulate that Defendants contend that the allegations in the Second Amended

Complaint are deemed fully controverted by Defendants, and each and every one of them is disputed and that no further responsive pleading from Defendants is required.  If, for any reason, the Settlement and Judgment do not become Final or operative as of the Effective Date, or the Effective Date does not occur, the Second Amended Complaint shall be stricken from the record and the operative complaint in the Action shall revert to the filed First Amended Complaint that preceded the Second Amended Complaint, and no prejudice shall occur to any motion to arbitrate filed or to be filed by any Defendant; and no Defendant shall be deemed to have waived a right to file a motion to compel arbitration or claim that Class Members have waived their right to participate in class/collective actions.  The Defendants named in the Second Amended Complaint shall include:  Defendants Santa Barbara Hospitality Services, Inc., The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., Santa Barbara Hospitality Services, LLC, DG Hospitality Van Nuys, LLC, Rouge Gentlemen's Club, Inc., Brookhurst Venture, LLC, City of Industry Hospitality Venture, Inc., Farmdale Hospitality Services, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., Platinum SJ, Enterprise, PNM Enterprises, Inc., Rialto Pockets, Incorporated, Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., The Oxnard Hospitality Services, Inc., Washington Management, LLC, Brookhurst Venture Anaheim, LLC, City of Industry Hospitality Venture, LLC, Farmdale Hospitality Services, LLC, Inland Restaurant Venture I, LLC, Midnight Sun Enterprises, LLC, Olympic Avenue Ventures, LLC, PNM Enterprises Santa Ana, LLC, The Oxnard Hospitality Services, LLC, Rialto Pockets, LLC, Santa Barbara Hospitality Services, LLC, Santa Maria Restaurant Enterprises, LLC, and Washington Management Los Angeles, LLC.

4.2     **Plaintiffs' Submission of Additional Materials For Final Approval Of Settlement**.  Plaintiffs shall file a comprehensive motion for final approval of settlement and a declaration of the Settlement Administrator.

5.     **PAYMENTS BY DEFENDANTS**

5.1     **Settlement Amount**.

5.1.1     **The Gross Cash Settlement Amount**.  The Gross Cash Settlement Amount is three million six hundred fifty thousand dollars ($3,650,000).  Under no circumstances shall Defendants be responsible for making payments in excess of the Gross Cash Settlement Amount.

Defendants shall fulfill their payment obligations under this Agreement pursuant to the following timeline, which is based in part on the payment of the Byrne settlement, as described below:

On or before January 31, 2020, Defendants shall move the current funding set aside for the *Byrne* and *Ortega* settlements of not less than $1,200,000.00 into the Fortis Attorney Client Trust Account (hereinafter, "Trust Account"), and shall deposit an additional $150,000 towards the *Byrne* and *Ortega* settlements on a monthly basis into this same Trust Account beginning January 31, 2020.  The timeline for distribution of funds shall be as follows:

Thirty (30) days after the end of the third *Byrne* claims period, all funds for the Byrne and Ortega settlements in the Trust Account shall be paid towards Defendants' obligations under the *Byrne* settlement, except for $800,000.00 which shall remain in the Trust Account;

Within thirty (30) days of the effective date in *Ortega*, $800,000.00 shall be paid under the *Ortega* settlement, pursuant to the terms of this Agreement;

Also within thirty (30) days of the effective date in *Ortega*, all other funds remaining in the Trust Account for the Byrne and Ortega cases *over* the $800,000.00 available for distribution in *Ortega* shall be paid towards Defendants' obligations under the *Byrne* settlement;

Thirty (30) days after the first *Ortega* payment, Defendants shall pay not less than $150,000.00 per month towards their obligations in *Byrne* into the Trust Account, until Defendants have satisfied all payment obligations under the *Byrne* settlement;

Thirty (30) days after the final *Byrne* payment, Defendants shall pay not less than $150,000.00 per month towards their obligations in *Ortega* into the Trust Account until Defendants have satisfied all payment obligations under this Agreement.

      5.1.2   **Four Distributions of Settlement Funds.**   There shall be four distributions of Settlement Funds by the Settlement Administrator, described below:

**A. First Distribution:**  Within 30 days of receipt of the first $800,000.00 *Ortega* payment, the Settlement Administrator shall distribute the full amount of incentive payments to the four named Plaintiffs and the remaining amount ($790,000.00) shall be paid to Class Members who have submitted a valid claim form for a pro rata portion of their Settlement Share as well as to PAGA, attorney's fees, and costs, on a pro rata basis.

**B. Second Distribution**:  After Defendants' payment obligations are complete in <u>*Byrne*</u>, within thirty (30) days of Defendants having contributed an additional $900,000.00 to the Trust Account pursuant to the timeline set forth in Paragraph 5.1.1, the Settlement Administrator shall distribute those funds a *pro rata* basis to Class Members who have submitted a valid claim form and are still owed funds under the Settlement, attorney's fees, costs and PAGA.  If a Participating Class Member failed to cash his or her

25

settlement check from the First Distribution, the amount of that check shall be included in
the Second Distribution and that Class Member shall still receive a check in the Second
Distribution.

C. **Third Distribution**:  Within thirty (30) days of Defendants having contributed an
additional $900,000.00 to the Trust Account pursuant to the timeline set forth in
Paragraph 5.1.1, the Settlement Administrator shall distribute said funds on a pro rata
basis to Class Members who have submitted a valid claim form and are still owed funds
under the Settlement, attorney's fees, costs and PAGA.  If a Participating Class Member
failed to cash his or her settlement check from the Second Distribution, the amount of
that check shall be included in the Third Distribution and that Class Member shall *not*
receive a check in the Second Distribution.

D. **Final Distribution**:  Following the Third Distribution, when Defendants have
contributed an additional $1,050,000 to the Trust Account based on the payment schedule
in Paragraph 5.1.1 above, the Settlement Administrator shall distribute all funds
remaining on hand for the *Ortega* Settlement on a pro rata basis to Class Members who
have submitted a valid claim form and are still owed funds under the Settlement,
attorney's fees, costs and PAGA.  If a Participating Class Member failed to cash his or
her settlement check from the Third Distribution, the amount of that check shall be
included in the Final Distribution and that Class Member shall *not* receive a check in the
Final Distribution.

Cy Pres:  Any amounts remaining from uncashed checks from the Final Distribution after
checks are cancelled within 60 days shall be issued to the Cy Pres Beneficiary.

26

5.2      **Penalties Pursuant To California Labor Code Section 2699**.  A total of One
Hundred Thousand Dollars and Zero Cents ($100,000.00) from the Gross Cash Settlement Amount
shall be allocated to the California Labor Code Section 2699 claim and shall be paid as set forth in
Par 5.1.2.  That amount shall be paid by the entities listed in the definition of the California
Settlement Class.  Seventy Five Thousand Dollars and Zero Cents ($75,000.00) shall be paid to the
Labor and Workforce Development Agency ("LWDA") consistent with Labor Code §§ 1698-
2699.5.  The remaining Twenty Five Thousand Dollars and Zero Cents ($25,000.00) shall remain a
part of the pool allocated to the payment of claims for the California Settlement Class.  These
payments shall be made pursuant to the Schedule set forth in Paragraph 5.1.3 above.

5.3      **Costs Of Settlement Administrator**.  All Administration Costs shall be paid by
Defendants out of the concurrent *Byrne* settlement as the cost of allocating said expenses would
itself be prohibitively expensive.  No amount shall be deducted from the Gross Cash Settlement
Amount for costs of Settlement Administration in this case.  The Settlement Administrator shall
perform all necessary class administration duties, which shall include, without limitation, mailing
notices and Claim Forms, performing address updates and verifications as necessary prior to the
first mailing, mailing deficiency letters, performing a single skip trace on any returned mail for
which a forwarding address has not been provided by the United States Postal Service, and the
calculation, processing, and mailing of all Class Member settlement checks and 1099s, or other
applicable tax forms, to Members of the Settlement Classes and tax authorities.

5.4      **Class Counsel Attorneys' Fees And Expenses**.

5.4.1    **Payment To Be Made From Gross Settlement Fund**.  Subject to
Paragraph 7.3, Defendants agree to pay fees and costs awarded by the Court to Class Counsel
from the Gross Cash Settlement Fund.

5.4.2    **Application**.  Class Counsel will apply to the Court for an award of attorneys' fees up to nine hundred twenty-five thousand dollars ($912,500), plus a separate amount for actual, reasonable litigation costs.  Defendants shall not oppose such application if Class Counsel's application requests an award of attorneys' fees not to exceed twenty-five percent (25%) of the Gross Cash Settlement Amount of $912,500 plus reasonable costs.  Failure of the Court to award the requested attorney's fees and/or costs is not a ground to void the Agreement.  The Parties continue to reserve all rights to oppose or otherwise comment on any petition for fees and costs filed by any Objectors or any other objectors or their counsel.

5.4.3    **Court Award Of Fees And Costs Is Exclusive Remedy**.  Except as provided in this Agreement, Defendants shall not bear any other expenses, costs, damages, or fees incurred by the Class Representatives, by any Member of the Settlement Classes, or by Class Counsel and their experts, advisors, agents, class administrators or representatives.  Any award of attorneys' fees and costs payable hereunder and approved by the Court shall be in complete satisfaction of any and all claims for such attorneys' fees and costs under state or federal law which the Class Representatives, the Settlement Classes, or Class Counsel have or may have against the Released Persons arising out of or in connection with the Actions and this Settlement, including, but not limited to, any claims for attorneys' fees and costs involved in litigating the Actions and negotiating and implementing this Agreement, including attorneys' fees and costs incurred through and after the final disposition and termination of the Actions.

5.4.4    **Fees And Expenses For Objecting Class Members Or Class Members Who Opt-Out**.  Other than as may be ordered by the Court, Defendants and the Released Persons shall not be responsible to any Class Representative or Class Members who submit objections to the Settlement (or any part thereof).  Defendants and the Released Persons shall not be responsible for attorneys' fees, costs, or expenses of any kind to any Class

28

Representatives or Class Members who exclude themselves from the Actions, unless otherwise allowed by law and ordered by a court.  The Class Representatives and Class Counsel shall not be responsible to any Class Members who submit objections to the Settlement (or any part thereof) or exclude themselves from the Actions for attorneys' fees, costs, or expenses of any kind.

      **5.5**      **Incentive Fee Awards**

           **5.5.1**    **Application For Incentive Fees**.  Class Counsel may apply to the Court for an award of incentive fees up to $2,500 to the four (4) Class Representatives (Adriana Ortega, Roberta Friedman, Adriana Avelar and Sheyenne McCrea) no later than ten (10) days prior to the Fairness Hearing; which is to be paid from the Gross Cash Settlement Amount. Defendants agree not to oppose an application by any Plaintiff or Class Representative that do not exceed $2,500.  Failure of the Court to award the requested incentive awards is not a ground to void the Agreement.

           **5.5.2**    **Payment Of Incentive Fees.**  The Settlement Administrator will pay the incentive fees awarded by the Court to the Class Representatives as set forth in Par 5.1.1 and 5.1.2.

      **5.6**      **Payment To Class Members**.

           **5.6.1**    **Claim Forms Process.**   In order to be paid any Settlement benefits, a Class Member has to complete and sign the Claim Form and a W-9 Form and has to timely return those forms along with any and all supporting documentation to the Settlement Administrator before the expiration of the Claims Period.  Class Members who do not timely submit the Claim Form and W-9 Form to the Settlement Administrator will not be entitled to receive any cash benefits from the Settlement.

5.6.2   **Payment Formula**.  Class Members will be paid for their Dance Days. The amount for each Dance Day shall be based upon the following:  the Net Monetary Settlement Amount shall be divided by the total number of Dance Days of Claiming Class Members, determined by the Claims Administrator pursuant to Par 5.6.3.  Class Members shall be compensated from the Net Monetary Settlement Amount only for their number of Dance Days.

5.6.3   **Determination Of Number Of Dance Days For Individual Class Member Compensation**.  If a Class Member's submitted Claim Form contains a number of Dance Days that is less than the number of Dance Days reflected in the Clubs' records, payment will be calculated using the number of Dance Days in the Clubs' records.  If a Class Member's submitted Claim Form contains a number of Dance Days that is between 100% and 120% of the number of Dance Days reflected in the Clubs' records, the payment will be calculated using the number of Dance Days on the Class Member's Claim Form.  The Settlement Administrator shall mail each Class Member whose Claim Form contains a number of Dance Days that is greater than 120% of the number of Dance Days reflected in the Clubs' records, within ten (10) days of receipt of the Class Member's completed Claim Form, a notice informing her of this fact and that she had the option of:  (i) accepting the number of Dance Days for that Class Member contained in the Clubs' records as the basis for her claim; or (ii) submitting supporting documentation and evidence supporting the number of Dance Days in the Claim Form pursuant to the procedures set forth below.  If the Class Member does nothing further or fails to timely submit additional documentation supporting the number of Dance Days stated on her Claim Form, her claim will be calculated based on the number of Dance Days for that Class Member contained in the Clubs' records.  If the Class Member submitted additional documentation, Class Counsel and Defense Counsel shall meet and confer to resolve the number of Dance Days that would be used to calculate the Class Member's settlement payment.  If Class Counsel and Defendants' Counsel are

not able to agree on the number of Dance Days, the Claims Administrator shall make a final determination following submission from both counsel.

        5.6.4      **Determination Of The Identity Of The Clubs That The Entertainer Performed At For Purposes Of Determining Individual Class Member Compensation**.  If the information regarding the Club(s) at which the Class Member claims to have performed listed on the Class Member's submitted Claim Form matches the information contained in the Clubs' records, the Class Members' Settlement payment will be calculated using the identities of the Clubs on the submitted Claim Form.  The Settlement Administrator shall mail each Class Member whose Claim Form contained a statement that she danced at any Club(s) not reflected in the Clubs' records, within ten (10) days of receipt of the submitted Claim Form, a notice informing her of this fact and that she has the option of:  (i) accepting the identity of the Club(s) at which she performed that are contained in the Clubs' records as the basis for her claim; or (ii) submitting documentation and evidence supporting her claim that she danced at additional or different Club(s).  If the Class Member did nothing further or fails to timely submit additional documentation supporting her claim that she performed at additional or different Clubs, her claim will be calculated based on the Clubs' records regarding the identity of the Clubs at which the Class Member performed.  If the Class Member submitted additional documentation, Class Counsel and Defense Counsel shall meet and confer and resolve the Club(s) that would be used to calculate the Class Member's settlement payment.  If Class Counsel and Defendants' Counsel are not able to agree on the number of Dance Days, the Claims Administrator shall make a final determination following submission from both counsel.

        5.6.5      **Time For Distribution Of Settlement Payments To Class Members**. The Settlement Administrator shall cause the Settlement payment(s) to the Class Members who have made Valid Claims to be mailed as set forth in Par 5.1.2.

5.6.6   **No Reversion Of Unpaid Or Uncashed Amounts**.  There shall be no reversion to Defendants.  The entire Gross Settlement Amount shall be distributed to Class Members, and payment of attorneys' fees and costs, LWDA PAGA payment, and incentive awards.  Sums paid by checks not cashed within sixty (60) days of the final distribution by the Claims Administrator shall be paid to the C*y Pres* Beneficiary.

5.6.7   **Judgment in the Event of Default.**  Should Defendants default on any of the payments due pursuant to this Section, the Administrator shall notify Class Counsel and counsel for Defendants in writing of any default.  If the default is not cured within 14 days, Plaintiffs may submit to the Court the Consent Judgment agreed to by the Parties (that will be submitted to the Court at the time of final approval), which shall be in entered in the amount of the funds that remain unpaid under this Section, plus an additional 10% of the outstanding funds.

# 6.   TAXATION

The Settlement Administrator will issue 1099 Forms to each recipient of any monies paid from the Gross Settlement Amount or Net Settlement Amount pursuant to this Settlement.    The Parties agree that for purposes of these payments, Settlement Class Members are not employees. Forms 1099, or any other required forms, will be distributed at times and in the manner required by the Internal Revenue Code of 1986 (the "Code") and consistent with this Agreement.  If the Code, the regulations promulgated thereunder, or other applicable tax law, is changed after the date of this Agreement, the processes set forth in this Section may be modified in a manner to bring the Clubs in compliance with any such changes.  Each Class Member, Class Representative, and Class Counsel shall be obligated to obtain their own tax advice concerning the proper reporting and tax consequences of any payments received under this Settlement Agreement, and shall each assume the responsibility of remitting to the Internal Revenue Service

and any other relevant taxing authority, any amounts required by law from each recipient of any monies paid under this Agreement without any further contribution from any of the Released Persons.  The Clubs will not be liable for any tax consequences and each Member of the Settlement Classes shall hold the Clubs harmless and indemnify them for all taxes, interest, penalties, and costs, including attorneys' fees, incurred by the Clubs by reason of any claims relating to the non-withholding of employee taxes from claims payments from the Net or Gross Settlement Amount.  Each Class Representative shall hold the Clubs harmless and indemnify them for all taxes, interest, penalties and costs, including attorneys' fees, incurred by the Clubs by reason of any claims relating to the non-withholding of taxes from incentive payments paid to the Class Representatives pursuant to this Agreement.

**7.     RELEASES AND COVENANTS**

7.1     **Release By California Class Members**.  Upon the Effective Date of this Agreement, the California Releasing Persons hereby forever and completely discharge the Released Persons from any and all California Claims, Claims, liabilities, demands, causes of action, or lawsuits, known or unknown, including Unknown Claims, whether legal, statutory, equitable or of any other type or form, whether under federal law (excluding any and all claims arising under the FLSA (which are addressed in Paragraph 7.2)) or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of or in connection with acts, omissions, facts, statements, matters, transactions, or occurrences that have been or could have been alleged in this Action, including but not limited to misclassification and other claims as pled in the *Ortega* Action, overtime, minimum wages, missed or inadequate meal periods and rest breaks, unpaid tip income, reimbursement for uniform costs, itemized wage statement violations, record keeping violations, and waiting time penalties, arising in connection with such claims from the Defendants, Clubs, Consulting and/or Companies' treatment of the California Settlement Class

Members during the California Class Period, including but not limited to and whether plead or not, claims under Labor Code §§ 201, 202, 203, 204, 212, 218, 218.6, 221, 224, 226, 226.7, 350, 351, 353, 402, 435, 510, 512, 558, 1174, 1194, 1197, 1199, 2802, and the Private Attorneys General Act, Labor Code 2698 *et seq.*, Wage Commission Orders 5 and 10, and Business & Professions Code §§ 17200, *et seq.*, as it relates to the underlying California Labor Code claims, from October 30, 2017 to the date of preliminary approval.

      7.2   **Release By FLSA Settlement Class Members**. Upon the Effective Date of this Agreement, all members of the California Class who sign the Claim Form and submit it to the Settlement Administrator shall be deemed to have opted into the FLSA collective action. Upon the Effective Date, each and every FLSA Settlement Class Member and the FLSA Releasing Persons hereby forever completely release and discharge the Released Persons from any and all misclassification and wage-related claims of any kind arising under the FLSA, based on any act or omission that occurred, during the FLSA Class Period, in any way related to any of the facts or claims alleged or could have been alleged in the Actions or by reason of the negotiations leading to this settlement, even if presently unknown and/or un-asserted, from October 30, 2017 to the date of preliminary approval. The matters released by the FLSA Releasing Persons herein also include any breach of contract claims, and any state common law wage claims including, but not limited to, claims of unjust enrichment and *quantum meruit*, derived from or related to the Released Persons' alleged failure to pay wages in violation of the FLSA. With respect to any and all claims or potential claims the FLSA Settlement Class Members may have, upon the Effective Date, the FLSA Settlement Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived, and may not assert in any proceedings as a bar to or voiding in any way the effectiveness of this release, the provisions, rights and benefits of any provisions of the Laws of the United States and any claims arising or of any state which provides that a general

release does not extend to claims which a party does not know or expect to exist in its favor at the time of executing the release, which if known to the party may have materially affected the Settlement.  Upon the Effective Date, the FLSA Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her would have materially affected his or her settlement with the debtor or released party.

The FLSA Settlement Class Members' release described in this paragraph shall include all released claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including but not limited to conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The FLSA Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

      7.3     **Covenant Not To Sue**.  As of the Effective Date, the Class Representatives, on behalf of themselves and the Members of the Settlement Classes who have not timely filed an Opt-Out/Exclusion Form, covenant and agree:  (i) not to file against the Released Persons any claim based on, related to, or arising from any Released Claim; (ii) to the extent any lawsuit or administrative claim has been made, it shall be dismissed or withdrawn; and (iii) that the foregoing covenants and agreements shall be a complete defense to any such claims against any Released Persons.

8.    **TERMINATION OF SETTLEMENT**

8.1    **Timing And Events Sufficient To Trigger Termination**.  This Agreement and
the Settlement shall terminate and be cancelled within ten (10) business days after any of the
following events if one of the Parties provides written notification of an election to terminate the
Settlement:

(a)    The Court declines to provide preliminary approval (and the
parties cannot resolve the Court's findings), or final approval of this Agreement, or declines to
enter or materially modifies the contents of the Parties' agreed upon Final Approval Order and/or
of Judgment;

(b)    The Court's Judgment in this case is vacated, reversed or modified
in any material respect on any appeal or other review or in a collateral proceeding occurring prior
to the Effective Date;

(c)    The Effective Date in this case does not occur for some other
reason; or

(d)    Any federal or state authority objects to the Agreement in this case,
and the objections are sustained at a preliminary or final approval hearing.

8.2    **Effect Of Termination**.  In the event the Agreement is not approved by the Court
or the Settlement is terminated or fails to become effective in accordance with the terms of the
Agreement, the Parties shall be restored to their respective positions in the Actions as of May 22,
2019.  In such event, the terms and provisions of the Agreement, shall have no further force and
effect with respect to the Parties and shall not be used in the Actions or in any other proceeding for
any purpose, and any order or judgment entered by the Court in accordance with the terms of the
Agreement shall be treated as vacated, *nunc pro tunc* and Plaintiffs may seek to have the First
Amended Complaint being reinstated as the operative complaint in the *Ortega* action.  The Party

36

who terminates the Agreement, for whatever reason, will be responsible for the Administrative

Costs incurred to the date of such termination and any further Administrative Costs as a result

thereof (whether Defendants have initially paid for them or not).  If both Parties terminate the

Agreement, they will be equally responsible for the Administrative Costs incurred  to the date of

such termination and any further Administrative Costs as a result thereof (whether Defendants have

initially paid for them or not).  In the event the Settlement is terminated, none of the Parties hereto

shall have any obligations to make any payments to any Party, Class Member or attorney, and any

Preliminary Approval Order, Judgment, including any order of class certification pursuant to the

Agreement shall be vacated.  If the Agreement is terminated, or is reversed, vacated, or modified in

any material respect by the Court or any other court, the certification of the Settlement Classes shall

be vacated, the Actions shall proceed as though the Settlement Classes had never been certified,

and no reference to the prior Settlement Classes or any documents related thereto shall be made for

any purpose.  In the event the Settlement is rescinded, terminated or not approved for any reason,

the Second Amended Class Action Complaint will be withdrawn and will be treated by the Parties

and the Court as if they had not been filed.

## 9.      PRESS CONTACTS/PUBLICITY

The Parties and their lawyers will not contact the press or general media regarding the

Actions or this Agreement for a period of six months from the entry of Judgment.  As used herein,

"the press or general media" shall refer to and include newspapers, periodicals, magazines, online

publications, and television and radio stations and programs, and any representative of the

foregoing.  The Parties and their lawyers may return phone calls or otherwise respond to any

inquiries they receive directly from the press or general media, but in doing so will only advise of

the existence of this provision and direct the requesting Party to the Court file without providing

any further information.  This provision shall not preclude Defendants and the Clubs from making announcements and/or disclosure required by law.

## 10.   MISCELLANEOUS PROVISIONS

10.1   **No Assignment Of Rights**.  The Plaintiffs and Class Representatives warrant and represent that they have not assigned any released claim to any other person or entity.  This warranty and representation shall survive the execution of this Agreement.  The Class Representatives shall hold the Released Persons harmless from and against any claim, damages, litigation, causes of action, and expenses, including reasonable attorneys' fees, resulting from any breach by them of this warranty and representation, or any breach of their release of released claims.

10.2   **No Admission Of Wrongdoing**.  Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance thereof is, or may be deemed to be or may be used as (a) an admission or evidence of the validity of any released claim, or any alleged wrongdoing or liability of the Released Persons; (b) an admission or evidence of any fault or omission of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal, other than such proceedings as may be necessary to consummate or enforce this Agreement, the Settlement memorialized herein or the Judgment; and (c) an admission or evidence that the Actions is appropriate for class treatment or suitable for maintenance as a private-attorney-general action; provided, however, that this Agreement and/or Judgment may be filed and used in any action or proceeding in any court, administrative agency or other tribunal to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, accord and satisfaction, claim preclusion, issue preclusion or any similar defense or counterclaim.

10.3     **Class Certification**.  Defendants do not consent to certification of the Class for any purpose other than to effectuate the Settlement of this Action.  The Parties acknowledge and agree that Defendants' consent to provisional certification for purposes of this Settlement only does not constitute an admission of wrongdoing, fault, liability, or damage or any kind to any Plaintiff or Class Member.

10.4     **Destruction Of Documents Produced**.  All documents and/or things produced or generated through discovery by any Party in this litigation shall be destroyed within 30 days of the Effective Date.  Each Party shall promptly certify to the other that all documents and/or things produced or generated through discovery have been destroyed.

10.5     **CAFA Notice**.  The Settlement Administrator will send any required CAFA Notice and will provide updated notices if required by law.

10.6     **Amendment**.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties hereto or their successors-in-interest.

10.7     **Arms-Length Negotiations**.  This Agreement and Settlement were entered into after substantial good faith, arms-length negotiations between the Parties, Class Counsel, and Defendants' Counsel.

10.8     **Authority To Execute**.  Each counsel or other person executing this Agreement on behalf of any of the Parties hereto warrants that such person has the authority to do so.

10.9     **Cooperation Of The Parties**.  The Parties acknowledge that it is their intent to consummate expeditiously the Settlement memorialized in this Agreement and will cooperate to the extent necessary to effectuate and implement, and exercise their best efforts to accomplish, all terms and conditions of the Agreement.  The Parties further agree that the terms of the Agreement were negotiated in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel of the Parties' own choosing.

10.10 **Effective Agreement; Counterparts**.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same Agreement.  The Agreement may be executed by signature delivered digitally (e.g. via Docusign), by facsimile or PDF and need not be the original "ink" signature.  A complete set of executed counterparts shall be filed with the Court.  This Agreement shall become effective upon its execution by the Class Representatives, Defendants, their respective counsel, and approval by the Court.

10.11 **Entire Agreement**.  This Agreement and the exhibits hereto constitute the entire fully integrated agreement among the Parties.  No representations, warranties or inducements have been made to any Party concerning the Settlement, this Agreement or its exhibits other than the representations, warranties and covenants contained in such documents.

10.12 **Force Majeure**.  The failure of any of the Parties to perform any of their obligations hereunder shall not subject such Party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by acts of God, fires, accidents, hurricanes, earthquakes, other natural disasters, explosions, floods, wars, interruptions or delays in transportation, power outages, labor disputes or shortages, shortages of material or supplies, governmental laws, restrictions, rules or regulations, sabotage, terrorist acts, acts or failures to act of any third parties, or any other similar or different circumstances or causes beyond the reasonable control of such Party.

10.13 **Governing Law**.  Except as otherwise stated herein, this Agreement shall be governed by the laws of the State of California.  All actions or proceedings relating to this Agreement may only be brought in the United States District Court for the Central District of California.

10.14   **Jurisdiction**.  Upon the occurrence of the Effective Date, the Settlement shall be enforceable by the Court, and the Court shall retain exclusive and continuous jurisdiction over the Parties, the Members of the Settlement Classes to interpret and enforce the terms and conditions of, and rights under, the Settlement until the terms of the Agreement and the Declaratory Judgment are fully performed.

10.15   **Notice**.  Unless otherwise indicated herein, where any Party's exercise of any right under this Agreement requires written notice, the Party shall serve such written notice on the counsel of record for all other Parties by First Class U.S. mail or any method that is at least as reliable and timely as First Class U.S. mail.

10.16   **Party's Reliance On Own Knowledge**.  Each of the Parties acknowledges and represents that it has fully and carefully read this Agreement prior to execution; that it has been fully apprised by its counsel of the legal effect and meaning of this document and all terms and conditions hereof; that it has had the opportunity to make whatever investigation or inquiry it deemed necessary or appropriate in connection with the subject matter of the Actions; that it has been afforded the opportunity to negotiate as to any and all terms hereof; and that it is executing this Agreement voluntarily, free from any undue influence, coercion, duress, or menace of any kind.  This Agreement reflects the conclusion of each of the Parties that this Agreement, the Settlement, the judgments to be entered hereunder, and the releases, waivers and covenants contemplated hereby are in the best interest of said Parties, the general public, and the Settlement Classes.  Except as expressly provided herein, this Agreement is not intended to confer upon any other person or entity any rights or remedies.

10.17   **Severability**.  In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall in no way affect any other provision if Defendants'

41

Counsel and Class Counsel, on behalf of the Parties and the Settlement Class, mutually elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement, except as otherwise provided herein.

10.18    **Use Of Headings And Captions In Agreement**.  The headings and captions inserted in this Agreement are for convenience only and in no way define, limit, or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.  Except as otherwise provided in this Agreement, the Parties shall bear their own respective costs and fees.  None of the Parties, or their respective counsel, shall be deemed to be the drafter of this Agreement or its exhibits for purposes of construing their provisions.  The language in all parts of this Agreement and its exhibits shall be interpreted according to its fair meaning, and shall not be interpreted for or against any of the Parties as the drafter of the language.

10.19    **Computation of Time**.  When the period is stated in days or a longer unit of time, exclude the day of the event that triggers the period, count every day including intermediate Saturdays, Sundays, and legal holidays (unless the word "business" appears before the word "days" in which event Saturdays, Sundays and legal holidays should not be counted) and include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday.

10.20   **Waiver**.  The waiver by any of the Parties to this Agreement of any provision of the Agreement shall not be deemed a waiver by that Party of any other provision of this Agreement.

10.21   **Cooperation Of Class Counsel**.  All Class Counsel agree not to object or otherwise disparage the settlement terms and will agree to cooperate with each other in supporting the settlement, administering the Settlement, and moving towards securing both preliminary and

final Court approval of the Settlement without unreasonable delay.  If, however, there is a dispute between Class Counsel as to a matter relating to the Settlement or Administration, Lead Class Counsel shall determine the appropriate course of action taking the Settlement Classes' best interests into account.

**Signature Pages to Follow**

IT IS SO AGREED:

Dated: _____         ADRIANA ORTEGA

                                 By: _____
                                       Adriana Ortega


Dated: _____         ROBERTA FRIEDMAN

                                 By: _____
                                       Roberta Friedman


Dated: _____         ADRIANA AVELAR

                                 By: _____
                                       Adriana Avelar


Dated: _____         SHEYENNE MCCREA

                                 By: _____
                                       Sheyenne McCrea


Dated: _12/16/19_____          BROOKHURST VENTURE, LLC

                                 By: _____

                                 Print Name: Kathy Vercher, Manager

44

Dated: 12/16/19

CITY OF INDUSTRY HOSPITALITY VENTURE, INC.

By: _____

Print Name: <u>Kathy Vercher, President</u>

Dated: 12/16/19

FARMDALE HOSPITALITY SERVICES, INC.

By: _____

Print Name: <u>Kathy Vercher, President</u>

Dated: 12/16/19

INLAND RESTAURANT VENTURE I, INC.

By: _____

Print Name: <u>Kathy Vercher, President</u>

Dated: 12/16/19

MIDNIGHT SUN ENTERPRISES, INC.

By: _____

Print Name: <u>Kathy Vercher, President</u>

Dated: 12/16/19

OLYMPIC AVENUE VENTURE, INC.

By: _____

Print Name: <u>Kathy Vercher, President</u>

45

Dated: 12/16/19

PNM ENTERPRISES, INC.

By: _____

Print Name: <u>Kathy Vercher, President</u>

Dated: 12/16/19

PLATINUM SJ ENTERPRISE

By: _____

Print Name: <u>Kathy Vercher, President</u>

Dated: 12/16/19

THE OXNARD HOSPITALITY SERVICES,
INC.

By: _____

Print Name: <u>Kathy Vercher, President</u>

Dated: 12/16/19

RIALTO POCKETS, INCORPORATED

By: _____

Print Name: <u>Kathy Vercher, President</u>

Dated: 12/16/19

ROUGE GENTLEMEN'S CLUB, INC.

By: _____

Print Name: <u>Kathy Vercher, President</u>

46

Dated: 12/16/19

SANTA BARBARA HOSPITALITY
SERVICES, INC.

By: _____

Print Name: Kathy Vercher, President

Dated: 12/16/19

SANTA MARIA RESTAURANT
ENTERPRISES, INC.

By: _____

Print Name: Kathy Vercher, President

Dated: 12/16/19

THE SPEARMINT RHINO COMPANIES
WORLDWIDE, INC.

By: _____

Print Name: Kathy Vercher, President

Dated: 12/16/19

SPEARMINT RHINO CONSULTING
WORLDWIDE, INC.

By: _____

Print Name: Kathy Vercher, President

Dated: 12/16/19

WASHINGTON MANAGEMENT, LLC

By: _____

Print Name: Kathy Vercher, Manager

47

Dated: 12/16/19

BROOKHURST VENTURE ANAHEIM, LLC

By: _____

Print Name: Kathy Vercher, Manager


Dated: 12/16/19

CITY OF INDUSTRY HOSPITALITY VENTURE, LLC

By: _____

Print Name: Kathy Vercher, Manager


Dated: 12/16/19

FARMDALE HOSPITALITY SERVICES, LLC

By: _____

Print Name: Kathy Vercher, Manager


Dated: 12/16/19

INLAND RESTAURANT VENTURE I, LLC

By: _____

Print Name: Kathy Vercher, Manager


Dated: 12/16/19

MIDNIGHT SUN ENTERPRISES, LLC

By: _____

Print Name: Kathy Vercher, Manager


48

Dated: 12/16/19

OLYMPIC AVENUE VENTURES, LLC

By: _____

Print Name: Kathy Vercher, Manager

Dated: 12/16/19

PNM ENTERPRISES SANTA ANA, LLC

By: _____

Print Name: Kathy Vercher, Manager

Dated: 12/16/19

THE OXNARD HOSPITALITY SERVICES, LLC

By: _____

Print Name: Kathy Vercher, Manager

Dated: 12/16/19

RIALTO POCKETS, LLC

By: _____

Print Name: Kathy Vercher, Manager

Dated: 12/16/19

DG HOSPITALITY VAN NUYS, LLC

By: _____

Print Name: Kathy Vercher, Manager

49

Dated: _12/16/19_

SANTA BARBARA HOSPITALITY
SERVICES, LLC

By: _____

Print Name: Kathy Vercher, Manager


Dated: _12/14/19_

SANTA MARIA RESTAURANT
ENTERPRISES, LLC

By: _____

Print Name: Kathy Vercher, Manager


Dated: _12/16/19_

WASHINGTON MANAGEMENT LOS
ANGELES, LLC

By: _____

Print Name: Kathy Vercher, Manager


APPROVED AS TO FORM AND CONTENT:

Dated: _12.16.19_

FORTIS LLP

By: _____
Peter E. Garrell
John M. Kennedy
Attorneys for Defendants and the Clubs

50