UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-206 JGB (KKx)** | Date | July 8, 2021 |
| Title | *Adriana Ortega v. The Spearmint Rhino Companies Worldwide Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order: (1) GRANTING Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 98); and (2) GRANTING Plaintiffs' Motion for Attorney Fees (Dkt. No. 96) (IN CHAMBERS)

Before the Court are Plaintiffs' motion for final approval of class action settlement, ("MFA," Dkt. No. 98), and motion for attorneys' fees, ("Fees Motion," Dkt. No. 96). The Court held a hearing on these matters on July 27, 2020. The matters are unopposed. After considering the papers filed in support of the matters, as well as the oral argument of the parties, the Court GRANTS the Motions.

## I.   BACKGROUND

Adriana Ortega ("Ortega") initiated this action against Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., and Midnight Sun Enterprises, LLC ("Defendants") on February 3, 2017. (Dkt. No. 1.) The action claims Defendants misclassified exotic dancers at Spearmint Rhino clubs as independent contractors, and in so doing, violated 29 U.S.C. §§ 201 et seq. ("FLSA") and various sections of the California Labor Code.

On March 29, 2017 Ortega moved to certify a collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"). (Dkt. No. 16.) Shortly thereafter, Defendants moved to compel arbitration, (Dkt. No. 18), and to stay the case until the issuance of the then-pending decision by the United States Supreme Court in Epic Systems Corp. v. Lewis, 138 S. Ct. 1612 (2018), (Dkt. No. 21). Plaintiff filed a First Amended Complaint on April 14, 2017, adding a California Private Attorney General Act ("PAGA") claim. ("FAC," Dkt. No. 34.) On June 12,

2017, the Court issued an order denying Defendants' motion to compel arbitration, denying Plaintiff's motion for conditional certification, and granting in part Defendants' motion for a stay pending the resolution of Epic Systems. (Dkt. No. 48.)

While Ortega's case was stayed, two dancers opted in to the action. (Dkt. Nos. 61 (providing notice for Opt-in Plaintiffs Friedman and Avelar).) On December 14, 2018, the Court granted final approval of the settlement in Byrne v. Santa Barbara Hospitality, Inc., et al., Case No. 5:17-CV-00527 JGB (KKx), a nearly identical case in which Adriana Ortega was also a plaintiff. (See Byrne Dkt. No. 178.) The two Opt-in Plaintiffs in this action excluded themselves from the Byrne settlement, (Dkt. No. 75 at 5 n.3 (noting Friedman and Avelar filed opt-outs in Byrne so have individual claims in this action)), and a third Opt-in Plaintiff had continued to work for Defendants after the end of the Byrne settlement release period, (Dkt. No. 67-1 (noting McCrea worked through April 4, 2019)).

On May 15, 2019, after the Supreme Court issued its decision in Epic Systems, the Court granted Defendants' second motion to compel arbitration, granted Plaintiff's motion for preliminary certification and notice of a collective action under FLSA § 216(b), and stayed the PAGA claims of Ortega and Opt-in Plaintiffs pending the outcome of an appeal in Byrne. (See Dkt. No. 83.) However, counsel represented to the Court at the January 13, 2020 hearing that the FLSA collective action notice was never issued, and was put on pause as the parties negotiated a settlement. Plaintiffs submitted a motion for preliminary approval of the parties' settlement agreement on December 16, 2019. (Dkt. No. 87.) The Court granted preliminary approval on January 22, 2020, ("MPA Approval," Dkt. No. 88.)

Plaintiffs filed the MFA on June 9, 2020. (MFA.) Plaintiffs included in support a copy of the settlement agreement and settlement agreement notice, ("Agreement," Dkt. No. 98-1; "Notice," Dkt. No. 98-6), and several declarations, ("Ortega Declaration," Dkt. No 98-2; "Friedman Declaration," Dkt. No. 98-3; "McCrea Declaration," Dkt. No. 98-4; "Avelar Declaration," Dkt. No. 98-5; "Coomes Declaration," Dkt. No. 100-1). Plaintiffs filed the Fees Motion on June 2, 2020, and submitted one supporting declaration. ("Liss-Riordan Fee Declaration," Dkt. No. 96.) Defendants do not oppose the Motions.

## II. THE AGREEMENT

### A. Settlement Class

The "California Class" defined in the Agreement includes dancers who worked at 14 clubs owned by Defendants:

> All individuals who performed as entertainers and in conjunction therewith have provided nude, semi-nude, and/or bikini entertainment for customers from October 30, 2017 through the date of entry of the Preliminary Approval Order as "LLC Members" or "independent contractors" during any portion of the foregoing time period at the Clubs owned by Brookhurst Venture, LLC

(California Girls – Anaheim, CA); City of Industry Hospitality Venture, Inc. (Spearmint Rhino – City of Industry, CA); Farmdale Hospitality Services, Inc. (Blue Zebra – North Hollywood, CA); Inland Restaurant Venture I, Inc. (Spearmint Rhino – Van Nuys, CA); Midnight Sun Enterprises, Inc. (Spearmint Rhino – Torrance, CA); PNM Enterprises, Inc. (California Girls – Santa Ana, CA); Olympic Avenue Venture, Inc. (Spearmint Rhino – Los Angeles, CA); The Oxnard Hospitality Services, Inc. (Spearmint Rhino – Oxnard, CA); Rialto Pockets, Incorporated (Spearmint Rhino – Rialto, CA); Platinum SJ, Enterprise (Spearmint Rhino – San Jose); Rouge Gentlemen's Club, Inc. (Dames N Games – Van Nuys, CA); Santa Barbara Hospitality Services, Inc. (Spearmint Rhino – Santa Barbara, CA); Santa Maria Restaurant Enterprises, Inc. (Spearmint Rhino – Santa Maria, CA); and Washington Management, LLC (Dames N Games – Los Angeles, CA) during the California Class Period.

(Agreement ¶ 1.12.)  The California Class also includes individuals who opted out of the Byrne Action who worked in California.  (Id.)  Importantly, California Class Members who sign a claim form and submit it to the settlement administrator will be deemed to have opted into a "FLSA Class." [1]  (Agreement ¶ 7.2.)

## B. Financial Terms

Below is an overview of the financial terms of the Settlement Agreement:

- Gross settlement amount:                         $3,650,000
- Attorneys' fees, not to exceed:                  $912,500
- Service award to class representatives:          $10,000
- PAGA payment to LWDA                             $75,000[2]
- Net settlement amount:                           $2,600,000[3]

The $3,650,000 gross settlement amount is non-reversionary, so no amount will be returned to Defendants.  (Agreement ¶¶ 5.1, 5.6.6)  If a check remains uncashed 60 days after the final distribution, the settlement administrator will direct funds from the uncashed check to the Cy Pres beneficiary.  (Id. ¶ 5.6.6.)

//

---

[1] A member of the FLSA Class is any member of the California Class that submits a valid claim.  (Agreement ¶ 1.37.)  Thus, all FLSA Class Members are California Class Members, but some California Class Members (those who do not submit a valid claim) are not FLSA Class Members.

[2] 75% of $100,000 award.

[3] Plaintiffs did not provide an estimate of actual litigation expenses at the preliminary approval stage and now request $17,000 in costs.  (Fees Mot. at 1.)

### C. Settlement Class Members

The Settlement Class covers all individuals who are California Class Members (some of whom will become FLSA Class Members, upon the submission of a valid claim).[4] (See Agreement ¶ 1.57.) Class Members will be paid for their Dance Days. (Id. ¶ 5.6.) The amount for each Dance Day will be the net monetary settlement amount divided by the total number of Dance Days of claiming members. (Id.)

In order to receive their share of the Settlement, members must submit claims within ninety (90) days after the settlement administrator mails the Initial Settlement Notice. (Id. ¶ 3.2.1.) To be paid settlement benefits, members must complete and sign a claim form and a W-9 form. (Id. ¶ 5.6.) Late claims may be accepted by agreement of the parties and based on good cause, if there will be no delay to members who submit a valid claim form. (Id. ¶ 3.2.)

### D. Payment and Distribution of Funds

The settlement fund will be paid and distributed over several years. (Id. ¶ 5.1.2) Within thirty days of the effective date of the settlement, Defendants shall pay the first $800,000 towards their obligations under the Settlement, which shall thereafter be distributed on a pro rata basis for claiming class members, PAGA payment, and Court-approved attorney's fees and costs, with full payment of the Court-approved incentive awards. (Id. ¶¶ 5.1.1, 5.1.2(A); Mot. at 6.) The parties estimate that this first distribution will be in the summer of 2020, but it will be contingent on when the settlement obtains final approval. (Mot. at 6.)

Following the first Ortega payment and distribution, Defendants shall complete their payment obligations under the Byrne settlement, and then resume payments under the Ortega settlement in the amount of no less than $150,000 per month. (Agreement ¶¶ 5.1.1, 5.1.2(B)-(D).) Thus, it will take an additional 19 months to complete full payment of the Ortega settlement after the payment in Byrne is complete (comprised of the $800,000 initial payment, and then 19 monthly payments of $150,000, equaling the total $3,650,000 Ortega settlement fund. (Mot. at 6-7.) The second, third, and fourth Ortega distributions to Class Members will occur as Defendants' additional payments reach $900,000, a second $900,000, and a final $1,050,000. (Agreement ¶¶ 5.1.2(B)-(D).) Plaintiffs stated the reason for this extended payment period is to accommodate financial challenges faced by Defendants' clubs and the reality that Defendants would not be able to satisfy a larger judgment or settlement at this time. (Dkt. No. 87 at 7.) The Notice reflects the gross settlement amount and explains that the payments will occur in four payments. (Notice at 2.)

---

[4] The California and FLSA Classes, as defined in the Agreement, are coextensive in terms of the period and clubs covered. (Agreement ¶¶ 1.35, 1.37, 1.38). The only difference is that some California Class Members will not submit valid claims, and thus will not become FLSA Class Members. The claims form provides no way to opt into one class and not the other, though individuals may exclude themselves from the settlement and receive no benefits.

### E. Class Representatives

The Agreement provides that Plaintiffs Ortega, Friedman, Avelar, and McCrea may apply for an award of incentive fees up to $2,500 each. (Id. ¶ 5.5) In support of the incentive fee request, each Plaintiff submitted declarations. Plaintiffs substantially assisted with the litigation by providing relevant documents, speaking to other dancers, assisting with mediation, or discussing the terms of the settlement with Counsel. (Ortega Decl. (35 hours); Friedman Decl. (25 hours); McCrea Decl. (18 hours); Avelar Decl. (18 hours).)

### F. California Labor and Workforce Development Agency ("LWDA") Payment

The parties allocated $100,000 as a PAGA award, of which 75% ($75,000) will be paid to the LWDA with the remaining $25,000 going to the pool allocated for the California Settlement Class. (Id. ¶ 5.2.)

### G. Settlement Administration Costs

The settlement administration will be paid for through the reversionary funds that had been made available in the Byrne settlement and will not come out of the $3,650,000 Ortega fund. (Id. ¶ 5.3.) The settlement administrator is Kurtzman Carson Consultants, LLC ("KCC"). (Id. ¶ 1.56.) All administration costs will be paid by Defendants out of the concurrent Byrne settlement as the cost of allocating said expenses would itself be prohibitively expensive. (Id. ¶ 5.3.) No amount shall be deducted from the gross cash settlement amount for costs of settlement administration in this case. (Id.) KCC will perform all necessary class administration duties without limitation. (Id.)

### H. Injunctive Relief

The Settlement Agreement does not appear to include any injunctive relief.

### I. Release

All California Class Members who do not request exclusion agree to release their claims as follows. Upon the effective date of the agreement, California Class members release California law claims if they do not timely and validly opt out. (Id. ¶¶ 1.10, 1.11, 7.1.) By submitting a claim form, California Class Members become FLSA Class Members, and on the effective date of the agreement release their FLSA claims. (Id. ¶¶ 1.36, 7.2.) The Class Notice reflects that California Class Members who do not exclude themselves by opting out will be bound by a release of their California law claims, and that California Class Members who submit valid claim forms will be deemed to have released their FLSA claims. (Class Notice at 2.)

//
//
//

### J. Notice

The Agreement proposes the following procedure to notify class members of the settlement. (Agreement ¶ 3.1.) The settlement administrator will be provided with contact information for the California Settlement Class, and within 20 days, will mail and email a copy of class notice documents. (Id. ¶ 3.1.1.) If the mail is returned with a forwarding address, the notice documents will be resent within 10 days to the forwarding address. (Id.) If returned without a forwarding address, the administrator will perform a skip trace. (Id.) Notice documents are due within 90 days of the mailing of the original notice. (Id.) Reminder notice will be sent by email 14 days before the end of the claims period. (Id. ¶ 3.1.2.) The administrator will also provide internet notice on its website, (id. ¶ 3.1.3), and existing clubs will post a copy of the class notice in dressing rooms, (id. 3.1.4), within five days of preliminary approval through the close of the period.

KCC, the administrator, carried out the notice plan and mailed 3,450 class notices on March 5, 2020. (Coomes Decl. ¶ 7.) KCC received 1,112 Initial Notices returned by the USPS with undeliverable addresses. (Id.) Through credit bureau and/or other public source databases, KCC performed address searches for these undeliverable Initial Notices and was able to find updated addresses for 650 Class Members. (Id.) KCC promptly re-mailed Class Notice Documents to the found new addresses. (Id.) KCC also sent email notice to 3,450 class members for whom Defendants provided a last-known Email address. (Id. ¶ 8.) KCC also established a settlement website and telephone hotline. (Id. ¶¶ 10-11.) KCC received 5 requests for exclusion and no objections, as of June 10, 2020. (Id. ¶ 13.) However a single objection was filed with the Court on May 11, 2020. (Dkt. No. 94.)

During the entire claims period, the clubs have been closed per order of the State of California due to COVID-19 concerns so there was no one at the clubs to actually view the posted notices. (MFA at 2 n.2.) The Agreement permits the parties to agree on additional notice procedures and to accept late claim forms, so as soon as the clubs re-open, the parties have agreed to keep the settlement notice posted for a reasonable period of time and accept any resulting "late" claim forms, which the parties believe will significantly increase participation in the settlement. (Id.) Given that the settlement has a payout period of more than two years and several payments, there will be ample time to adjust the settlement shares from these "late" claim forms so that all class members receive their full settlement share. (Id.)

### III. LEGAL STANDARD

### A. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. Id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. Hanlon, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." Id.

In order to approve a class action settlement, the court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). Id.

### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure. While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Communs., Inc. v. AT&T Co., 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Newberg on Class Actions § 14.1 (4th ed. 2005) ("Two significant exceptions [to the 'American Rule'] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

### IV. DISCUSSION

### A. Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice

of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b).

The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

On January 31, 2020, KCC served notices in accordance with CAFA to the Attorney General of the United Sates and the Office of the Attorney General in all States where class members reside. (Coomes Decl., ¶ 3.) Ninety days after January 31, 2020 is Thursday, April 30, 2020. Thus, the CAFA requirements have been satisfied.

### B. Rule 23(a) and (b) Requirements

In its MPA Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). (MPA Order at 4-6.) The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Class has not changed since it was conditionally certified. All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### C. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its MPA Order, the Court approved the notice sent to Settlement Class Members. (MPA Order at 15.) KCC completed notice in accordance with the procedures approved by the Court. (See

supra Part II.E.)  The parties have taken additional measures to allow late claim forms in light of the COVID-19 public health emergency.  (Id.)  The Court therefore finds that notice to the Settlement Class is adequate.

**D.  Fair, Reasonable, and Adequate**

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  The Court's inquiry is procedural in nature.  Id.  Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Court held a final approval hearing on July 27, 2020.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the risk of maintaining class action status throughout the trial;
(4) the amount offered in settlement;
(5) the extent of discovery completed, and the stage of the proceedings;
(6) the experience and views of counsel;
(7) the presence of a governmental participant; and
(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998).  This list of factors is not exhaustive, and a court may balance and weigh different factors depending on the circumstances of each case.  See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

**1.  Strength of Plaintiffs' Case**

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits.  See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964-65 (9th Cir. 2009).  In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested."  Id. at 965.  In their MPA, Plaintiffs emphasized the difficult hurdles they would need to overcome to prevail on the merits of their case.  (Dkt. No. 87 at 13; MPA Order at 11-12; MFA at 12.)  As a result, the Court finds this factor weighs in favor of granting final approval.

//
//

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

The risk, expense, complexity, and likely duration of further litigation weigh in favor of final approval. Plaintiffs admit the risk, expense, and complexity of further litigation. (MPA at 13-14.) Without the Settlement Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long, complex, and expensive. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of final approval.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

Here the court had ruled Ortega was bound by an enforceable class action waiver and many, if not all, class members likely signed similar agreements. (MFA at 14-15.) This increased the likelihood of decertification of the class or certification of a much smaller class. Thus, this factor favors certification.

### 4. Amount Offered in Settlement

The gross settlement amount is $3,650,000. Counsel estimates this fund constitutes 16% of the total potential damages (calculated by multiplying $260 per shift times the estimated number of 88,000 dance days or shifts). (MFA at 15-16.) At the current level of participation, the number of dance days worked by participating class members is lower, 31,522. (Id.) In the prior Byrne settlement, the plaintiffs estimated their damages at $109 per "dance day," approximately half of the estimate here. Here, the estimated damages per day (or per shift) are $260, because Plaintiffs take into account all three of the central claims. (Id. at 16 n.10.)

Although the settlement amount represents a fraction of the maximum value of this litigation, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" In re Mego, 213 F.3d at 459 (quoting Officers for Justice, 688 F.2d at 628). While the gross settlement amount is a fraction of Plaintiffs' total potential recovery, Plaintiffs face significant obstacles in pursuing their claims. Considering these difficulties, the Court finds the settlement amount is fair and reasonable.

### 5. Extent of Discovery Completed, and the Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239. Plaintiffs

were in the process of conducting discovery when the action was stayed because of the settlement reached in the Byrne case. Nevertheless, Plaintiffs' counsel gained "sufficient" information regarding the case to make an informed decision regarding settlement by participating in mediation on May 22, 2019, investigating the claims, reviewing data and other information from the Byrne settlement and related to this case, and exchanging information with Defendants throughout the negotiation process. (MPA Order at 17.)

Based on these facts, the Court finds discovery was sufficiently advanced to allow the parties to make an informed decision about settlement. See DIRECTV, Inc., 221 F.R.D. at 527 ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (quoting 5 Moore's Federal Practice § 23.85[2][e] (Matthew Bender 3d ed.)). Accordingly, this factor favors settlement.

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995). Here, Class Counsel has significant experience in wage and hour class actions and asserts that the settlement represents a good recovery in light of the substantial risks of litigating Plaintiffs' claims. (MFA at 17-19.) This weighs in favor of preliminary approval.

### 7. Presence of a Government Participant

No governmental entity is present in this litigation. (MFA at 19.) Therefore, this factor favors approval.

### 8. Any Opposition by Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529.

Here, one class member objected to the Settlement, (Dkt. No. 94), and Plaintiffs' counsel has responded to the objection, (Dkt. No. 95). The argument from the objector's counsel was the PAGA allocation does not provide sufficient funds given potential exposure for willful misclassification of dancers as independent contractors. (Id.) Plaintiffs contend this is a lawyer-driven strategy to disrupt this settlement in a fourth-filed copycat action, and argue the willful misclassification claim was taken into consideration at mediation. (MFA at 19-20; Dkt. No. 95.)

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." DIRECTV, Inc., 221 F.R.D. at 529. The Court concludes the Agreement was well-received by the class and that this factor weighs in favor of approval.

### E.  Attorneys' Fees and Costs

#### 1.  Attorneys' Fees

Class Counsel request approval of $912,500 in attorneys' fees, which is equal to 25% of the non-reversionary Gross Settlement Amount. (Fees Mot. at 1; Agreement.) Courts are obliged to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028-29 (9th Cir. 2000). Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations. Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

Here, Class Counsel request the benchmark 25% rate, and estimate that their lodestar fees were $505,000 before the application of any multiplier. (Fee Mot. at 16.) A reasonable multiplier of 1.8 to account for the fact that Plaintiffs represented the class on a contingency basis for three years results in the requested benchmark rate of $912,500. Thus, the Court finds $912,500 in attorneys' fees is reasonable.

#### 2.  Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits,

documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

As noted in the MPA Order, the Agreement did not specify an upper limit on costs. (MPA Order at 13; Agreement ¶ 5.4.2.) Class Counsel now seeks $17,000 in costs. (Fees Mot. at 9.) Counsel provides a breakdown of the expenses incurred in the case, which include mediation costs, filing fees, mailing costs, service of process, travel, transcripts, and "miscellaneous." (Liss-Riordan Decl.) The Court removes the miscellaneous costs of $122, and finds that costs in the amount of $16,878 are reasonable, and within the range of costs it has approved for similar actions.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS final settlement approval;

(2) GRANTS the request for attorneys' fees and AWARDS Class Counsel attorneys' fees in the amount of **$912,500** from the gross settlement amount;

(3) GRANTS the request for costs and AWARDS Class Counsel costs in the amount of **$16,878** from the gross settlement amount;

(4) GRANTS the requests for incentive awards and AWARDS **$2,500** each to Ortega, Friedman, Avelar, and McCrea;

(5) DISMISSES the First Amended Complaint WITH PREJUDICE.

**IT IS SO ORDERED.**